JOSEPH J. BARONE, Appellant, v. McCORMICK TRANSPORTATION COMPANY, a corporation of the State of Delaware, and MICHIGAN MUTUAL LIABILITY COMPANY, a corporation of the State of Michigan, Appellees.

McCORMICK TRANSPORTATION COMPANY, a corporation of the State of Delaware, and MICHIGAN MUTUAL LIABILITY COMPANY, a corporation of the State of Michigan, Appellants, v. JOSEPH J. BARONE, Appellee.

(*October* 9, 1957.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Stephen E. Hamilton, Jr.,* for plaintiff.

*Herbert L. Cobin* for defendant.

Supreme Court of the State of Delaware, Nos. 16 and 19, 1957.

BRAMHALL, J.:

Two questions are presented by these appeals: (1) Was the injury accidental although sustained in the usual course of employment?; and, (2) did defendants waive the provisions of the Workmen's Compensation Act relative to medical treatment and expense after the expiration of thirty days?

On December 1, 1950, plaintiff in the regular course of his employment was engaged in unloading from a truck cotton bales, each weighing approximately 450 lbs. While pulling over one of these bales for the purpose of unloading it, plaintiff felt a sharp pain shoot down his leg from the area of his back. He called another employee of defendant, who assisted him in unloading his truck. Plaintiff also reported the accident to defendant by telephoning defendant's office in Wilmington. At the same time he stated that when he returned, the office of defendant's physician would likely be closed and requested permission to see his own physician. This request was granted. Upon finishing the day's work, plaintiff was driven by another employee to the office of defendant's physician. Finding that office closed, plaintiff then requested that he be taken to the office of his personal physician, which was done. With some assistance from other employees of defendant, plaintiff continued to perform his duties, although under the care of his physician. Plaintiff's physician subsequently referred him to a surgeon in Philadelphia, who, upon examination, diagnosed plaintiff's condition as a herniated intervertebral disc and recommended an operation. As a result of this diagnosis on January 22, 1951, plaintiff was operated upon for this condition. He remained in the hospital until February 2, 1951, at which time he was discharged.

In a statement given by plaintiff to the representative of the insurance company insuring defendant, plaintiff stated that he

sustained an injury to his back in 1946 and again in 1948, while working for defendant. The Industrial Accident Board found as a fact that plaintiff's condition was the result of his injury on December 1, 1950. That Board also found that defendants had agreed that plaintiff might consult his own physician and that plaintiff could recover medical expenses for the total period of disability. As to the first question, the Superior Court, while noting the discrepancy in the testimony of plaintiff, stated that there was substantial evidence upon which the finding of the Industrial Accident Board could be based and for that reason refused to disturb the finding. That Court further held that there was evidence to show a causal connection between the act and the injury. With respect to the medical award, the Superior Court found that the record justified the finding of the Industrial Accident Board that defendant's employee was an agent of defendant, with authority under the circumstances to authorize plaintiff to consult his own physician. The Superior Court held, however, that such authorization did not justify the inference or implication that plaintiff was thereby authorized, without permission from the Industrial Accident Board, to receive medical care after the expiration of the thirty-day period as provided by statute, and reversed this part of the finding of the Industrial Accident Board. The decision of the Superior Court was based upon the ground that the record failed to disclose that defendant was ever advised or ever had knowledge of the necessity of such services or that permission was ever requested therefor from either the Industrial Accident Board or from defendant.

Was the injury sustained by plaintiff on December 1, 1950, accidental? Although plaintiff at the time was engaged in the course of his usual employment, the Industrial Accident Board found that plaintiff suffered an injury by accident and that he was entitled to recover. The Superior Court affirmed that finding.

As we understand defendant's argument, they contend (1) that the disability of plaintiff was caused by prior injury, causing a gradual deterioration and resulting in the subsequent dis-

ability of plaintiff to perform the usual duties of his employment; and (2) that since there was nothing unusual in the circumstances under which plaintiff's disability occurred—the disability occurring in the usual course of plaintiff's employment—there could have been no "accident" within the meaning of the Workmen's Compensation Act. The Superior Court held that there was substantial evidence to support plaintiff's contention that he met with an accident and sustained the finding of the Industrial Accident Board to that effect.

We think that the ruling of the Superior Court was correct. There was testimony to the effect that plaintiff's injury was actually sustained in 1946; that he sustained an injury to his back in 1948 and that he received treatment as late as October, 1950, approximately one month prior to the date of the alleged accident. However, there is definite positive testimony on the part of plaintiff that while he was pulling over a heavy bale, he felt a sharp pain in his back and down his leg; that he had had no trouble with his leg prior to December 1, 1950, his only difficulty prior to that time being with his back. One of plaintiff's physicians testified that plaintiff gave a history to this effect on the evening of the day of plaintiff's injury. This physician further testified that during his previous treatment of plaintiff, there had been no indication of intervertebral disc pressure. Both physicians testifying on behalf of plaintiff stated that in their opinion the injury to the intervertebral discs was caused proximately by the pulling or moving of the bales by plaintiff. We think that there was substantial evidence to support the finding of the Industrial Accident Board and that the Superior Court was right in refusing to disturb its finding.

The fact that plaintiff's injury was sustained while he was engaged in the usual course of his employment does not necessarily prove that it was not an accident within the meaning of the Workmen's Compensation Act. While plaintiff was not engaged in any unusual or extra-hazardous employment, he did sustain a definite injury at a definite time and place while unloading a heavy bale weighing approximately 450 lbs. We agree

with the ruling of the Superior Court in the case of *Gray's Hatchery and Poultry Farms, Inc., v. Stevens,* 5 *Terry* (46 *Del.*) 191, 81 *A.* 2d 322, that if an injury occurring under such circumstances can be traceable to a definite time, place, and cause, while in the course of employment, the injury is accidental and is compensable. This case is in line with the large majority of decisions in other states. *Larson's Workmen's Compensation Law,* Vol. 1, section 3720, pp. 512-19; 58 *Am. Jur.,* Workmen's Compensation, section 255. The occurrence of the accident was sudden and unexpected. The circumstances of the employment were such that the Industrial Accident Board was fully justified in finding that the injury was due to the lifting of the heavy bales. Conceding that plaintiff was engaged in the usual course of his employment, the injury was an unusual and unforseen occurrence.

Defendant relies on the case of *Belber Trunk and Bag Co. v. Mensey,* 8 *Terry* (47 *Del.*) 595, 96 *A.* 2d 341, 342. The situation in this case is quite different from that in the *Belber* case. In the latter case this Court holding that there was no evidence at all that claimant suffered an injury and that the injury was the result of an accident, said, "It is significant, we think, that there is no testimony in the record whatsoever of any specific motion or activity of the appellee which was immediately followed by pain." In this case there was positive testimony to the effect that plaintiff felt a severe pain shoot from his back to his leg while lifting a 450 lb. bale of cotton and that he thereafter continued to suffer such pain. There was no evidence in the *Belber* case of any activity on the part of claimant resulting directly and immediately in injury. It was clear from plaintiff's own testimony and from the testimony of the medical experts that plaintiff suffered from a prior condition which was aggravated by the usual effort required of her and caused her condition to deteriorate until finally pain occurred. This Court therefore held that claimant's injury in that case fell within the category of an idiopathic disease unaccompanied by and unrelated to injury by accident. Likewise, in the case of *Walsh v. Diamond*

*State Brewery,* 7 *Terry* (46 *Del.*) 252, 82 *A.* 2d 740, also cited by defendant, the Industrial Accident Board found that the cerebral hemorrhage of claimant did not arise out of the employment but was due to the progressive nature of his preexisting diseased condition. The Superior Court held that there was substantial evidence to sustain such a finding and affirmed the finding of the Industrial Accident Board. If the Industrial Accident Board in that case had found that the injury had occurred as a result of an accident within the meaning of the Workmen's Compensation Act, the Superior Court would have undoubtedly approved such finding since there was substantial evidence to support a finding of the Industrial Accident Board to the effect that plaintiff was entitled to recover for an accident arising out of the course of his employment which the Superior Court could not set aside.

■ Did defendants waive their statutory right under the Workmen's Compensation Act relating to medical aid? The Industrial Accident Board found that the medical treatment of plaintiff by his own physician was authorized by an agent of the employer and that by reason thereof there was an implied consent for all subsequent medical treatment and incidental expenses. The Superior Court affirmed this finding as far as it related to treatment given and expense incurred during the first thirty days after the occurrence of the accident. However, that Court held that there was no evidence in the record which would justify the inference that employer's agent by giving plaintiff permission to visit his own physician by implication agreed to furnish medical services beyond the first thirty days. The Court's finding was based upon the ground that the record did not disclose that plaintiff had ever requested the Industrial Accident Board to allow those additional services as required by the Act, or that plaintiff had even informed his employer of his need for additional medical services beyond the thirty-day period or for an operation.

Defendants in their brief and at the oral argument stated that if this Court should find that there was an injury by accident, they would not "press error" as to that portion of the find-

ing of the Industrial Accident Board—which was affirmed by the Superior Court—relating to medical expense within the thirty-day period. In view of this concession, we do not reach the question of whether or not employer's agent or employee was authorized to permit plaintiff to consult his own physician during the first thirty-day period. We shall therefore consider only medical expenses incurred after the expiration of that time.

At this point reference to certain provisions of the Workmen's Compensation Act is pertinent. Title 19, *Del. C.*, § 2322(a) provides that the

"Employer shall furnish reasonable surgical, medical, dental, optometric and hospital services, medicine, and supplies * * * as and when needed, unless the employee refuses to allow them to be furnished by the employer."

Subsection (b) of the same section provides:

"If the employer, upon application made to him, refuses to furnish the services, the medicines, and supplies mentioned in subsection (a), the employee may procure the same and shall receive from the employer the reasonable cost thereof * * *."

Subsection (c) thereof provides:

"Upon application made to the Board by the injured employee or some one on his behalf, the Board may, in its discretion, require the employer to furnish additional services, medicines and supplies, * * *, as and when needed, for such further period as it shall deem right and proper. * * *."

Section 2323 provides:

"Any employee may apply in writing to the Board for permission to employ a physician, surgeon, dentist or optometrist other than the physician, surgeon, dentist or optometrist furnished by the employer. Such application shall state the name and address of the physician, surgeon, dentist or optometrist whose services are desired by the employee. Upon the approval by the Board of any such application, the employee by whom or on

whose behalf the application was filed shall be entitled to receive from his employer the reasonable cost of the services of any physician, surgeon, dentist or optometrist whose employment was approved, performed subsequent to such approval, within the limitations provided for in section 2322 of this title."

It will be seen that under the provisions of the Workmen's Compensation Act, as above referred to, the only manner in which an employee may secure aditional services after the expiration of the thirty-day period is by making application to and securing the approval of the Industrial Accident Board. It is not contended here that such approval was ever secured by plaintiff, or, in fact, that any such request was ever made. Plaintiff relies entirely upon the permission granted to plaintiff by another employee of the employer on the day of the accident to see his own physician as giving him implied authority to continue with medical treatment, under his own physician, after the thirty-day period.

We do not pass upon the question of whether or not an employee of an employer in the face of the provisions of the statute before referred to may legally waive the rights of the employer and of the insurance company, which is properly a party to this proceeding, because, in our opinion, no implication or inference can be found in the authorization to plaintiff to see his own physician which can be said to amount to a waiver of the provisions of the statute providing that plaintiff shall notify employer of the need for further medical treatment after the expiration of the thirty-day period or the need after such period for an operation. We think that this is particularly true in a case, where, as here, the evidence fails to show that the employer ever had knowledge of the necessity for further treatment or for an operation. As stated in the opinion of the Superior Court in the case of *Collins & Ryan v. Hudson,* 6 *Terry* (45 *Del.*) 438, 75 *A.* 2d 261, 265, the knowledge of the accident through another employee of employer "did not carry with it knowledge of a later discovered hernia or of the necessity for an operation six months later." In the present case the authority given to plaintiff by

employers through its employee to consult his own physician may not be construed as constituting a waiver of the statute requiring notice to the Industrial Accident Board and its approval of plaintiff's request for further treatment after the expiration of the thirty-day period. This is so because at the time of the alleged waiver the necessity had not then occurred and employer necessarily could not have had knowledge thereof or have intended to waive the requirements of the Act with reference thereto.

The judgment of the Superior Court affirming the finding of the Industrial Accident Board as to compensation for medical expense during the first thirty-day period and reversing the award of that Board allowing medical expenses occurring thereafter is hereby affirmed.