James P. MOONEY, Employee/Appellant,

v.

BENSON MANAGEMENT COMPANY,
Employer/Appellee.

Supreme Court of Delaware.

Submitted: May 9, 1983.

Decided: Sept. 13, 1983.

Sidney Balick (argued), Muriel L.D. Testa, Aerenson & Balick, Wilmington, for employee/appellant.

Robert W. Ralston (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for employer/appellee.

Before HERRMANN, C.J., McNEILLY, HORSEY, MOORE and CHRISTIE, JJ., constituting the Court *en Banc*.

HERRMANN, Chief Justice.

This is an appeal from the Superior Court's affirmance of the decision of the Industrial Accident Board, 451 A.2d 839, denying the petition of the appellant, James P. Mooney, for workmen's compensation for a heart attack.

I.

The facts are undisputed. Mooney had been in the construction trades for over 30 years and, during the last 10 years, he had been a superintendent for several construction companies. On November 1, 1979, he began working for the appellee, Benson Management Company (hereinafter "Benson"), as a construction superintendent. On November 27, 1979, Mooney experienced tightness and pain in his chest while in the course of his employment. He saw his family doctor, who referred him to a cardiologist. The specialist had various tests made, but found no objective evidence of a heart condition. However, he prescribed medication because of Mooney's subjective complaints, and continued to see him until Jan-

uary 8, 1980. Mooney continued to work for Benson until May 9, 1980, when he suffered a severe myocardial infarction while performing his usual duties.

Mooney sought compensation for economic loss and medical bills resulting from the May 9 heart attack. The Industrial Accident Board found that Mooney had heart disease which preexisted the May 9 attack, determining that the "disease may have started after an experience of chest pain in November, 1979." The Board based this conclusion upon Mooney's reports of pain soon after his employment by Benson and prior to the May episode, as well as upon a consultation report stating "that Mr. Mooney had an anginal syndrome dating approximately six (6) months prior to [hospital] admission in May, 1980." In its findings, the Board held that the May 9 attack occurred during the performance of usual duties, stating:

"... the claimant's job was by its very nature a pressure filled job with constant deadlines. The claimant himself testified that he is an easily excitable individual who has to have things done immediately. It is quite likely that the claimant's personality traits and the usual frustrations of his job probably aggravated his already existing heart problem. However, it cannot be concluded that the claimant was involved in any unusual exertion at the time of the heart attack."

The Board ruled that "any person with a pre-existing heart condition must show that his heart attack was caused by 'unusual exertion'"; and it denied Mooney's claim for failure to meet this legal standard.

Mooney appealed to the Superior Court, arguing that since the Board found that the heart condition did not pre-exist his employment by Benson, the Board should have applied the cumulative detrimental effect theory of *Chicago Bridge & Iron Co. v. Walker,* Del.Supr., 372 A.2d 185 (1977), and should have used the standard of usual-exertion applicable thereto. The Superior Court held that Mooney had not argued this theory before the Board and should not be

permitted to raise it on appeal. The Superior Court further determined that the record did not contain any evidence of gradual deterioration, and it affirmed the Board, concluding that the Board correctly applied the unusual-exertion test.

On appeal to this Court, Mooney argued that he raised the issue of cumulative detriment before the Board and that the Superior Court was in error in denying the application of the usual-exertion standard. Benson replies that the Board correctly applied the unusual-exertion standard to a coronary infarction under the rule of *Reynolds v. Continental Can Company,* Del.Supr., 240 A.2d 135 (1968).

## II.

A brief review of pertinent decisions of this Court in this field is deemed helpful:

In *Reynolds,* this Court held that the unusual-exertion standard is applicable in all coronary infarction cases. It was there stated:

"Distinction is made between a heart attack of the infarction type (resulting from a generalized condition and coronary occlusion caused by embolism or thrombosis depriving the heart of blood supply), in which there is no 'breakage' of any part of the body, and a heart attack in which there is such 'breakage', as in the case of a ruptured aorta. We make no ruling as to the latter type of heart case which may be analogous to the ruptured aneurysm in *General Motors Corporation v. McNemar,* Del. 202 A.2d 803 (1964), and the ruptured intervertebral disc in *Gray's Hatchery and Poultry Farms v. Stevens,* 7 Terry 191, 81 A.2d 322 (1950). In both of the latter cases, the usual exertion rule was applied. Compare 1A *Larson's Workmen's Compensation Law,* §§ 38.20 and 38.30." 240 A.2d at 136, f.n. 2.

The above conclusion and rationale were drawn from *Faline v. Guido and Francis DeAscanis & Sons, Inc.,* Del.Supr., 192 A.2d 921 (1963), a coronary infarction case in

which this Court denied compensation, stating:

"We think the doctors are in fundamental agreement. They agree that Faline suffered from coronary disease which culminated in the myocardial infarction suffered by him.... Coronary disease is the hardening of the coronary arteries with the consequent result that ultimately the flow of blood through one or more of the blood vessels will cease. When that occurs a heart attack takes place with resulting damage to the heart, itself. This, the doctors agreed, is what happened to Faline.

Both doctors agreed that Faline, irrespective of his physical exertions, as a result of the coronary disease from which he suffered would have had a heart attack within a short period of time. Faline's heart attack, in their opinion, was inevitable at or about the time it actually happened.

The only point of disagreement between the doctors, if indeed there was any real disagreement, was as to whether or not Faline's work was a precipitating factor of the heart attack. The cardiac specialist testified flatly that it was not, while the general practitioner testified that unusual physical exertion could be a possible triggering factor of a heart attack which was bound to occur within a short space of time by reason of the patient's coronary disease. However, there was no testimony whatsoever that any specific physical act of Faline was the trigger which set off his heart attack.

\* \* \* \* \* \*

Faline has wholly failed to meet the requirement of the statute. At no place in the record is there any proof of unusual or extraordinary effort on his part which was immediately followed by his heart attack. The record demonstrates without contradiction that Faline was stricken while performing the ordinary routine of his job. Over a course of time preceding the attack he had experienced warning-pain symptoms from similar ac-

tivity. It seems apparent to us that Faline was suffering from an idiopathic disease, perhaps aggravated by his usual work effort, but unaccompanied by and unrelated to injury by accident. As such, his case falls precisely within the rule of *Belber Trunk & Bag Co. v. Menesy,* supra [Del.Supr., 96 A.2d 341 (1953)]." 192 A.2d at 923, 924.

Shortly after *Reynolds,* however, in *Milowicki v. Post and Paddock, Inc.,* Del.Supr., 260 A.2d 430 (1969), this Court renounced the *Reynolds* unqualified "no-breakage" distinction as follows:

"It may be argued that the unusual exertion rule adopted in Faline is not applicable here because that case involved a myocardial infarction in which there was no 'breakage' of any part of the body [see *Reynolds v. Continental Can Company,* Del.Supr., 240 A.2d 135, 136, f.n. 2], whereas the instant case involved a rupture. It does appear that in many cases the element of 'breakage' has had major influence upon the choice between the usual-unusual exertion rules. 1A *Larson's Workmen's Compensation Law,* §§ 38.20, 38.71. But we are of the opinion that a distinction based upon the requirement of a 'breakage', as a controlling element in the usual-unusual exertion problem, is arbitrary and artificial and should not prevail. We see no sound reason for distinguishing a disc herniation from a back strain or sprain in the application of the unusual exertion rule. See 1A *Larson's Workmen's Compensation Law,* §§ 38.30, 38.37." 260 A.2d at 431.

And in *Milowicki,* this Court restated the rule governing the usual-exertion and unusual-exertion standards as follows:

"*Accordingly, we hold that, under the law of this State, a showing of unusual exertion is a prerequisite of compensability where the injury is due, in part at least, to the aggravation of a pre-existing physical weakness.* Compare *Philadelphia Dairy Prods. Co. v. Farran,* 5 Terry 437, 61 A.2d 400 (1948). *This rule is to be contrasted with the rule of Gray's Hatch-*

*ery & Poultry Farms, Inc. v. Stevens,* 7 Terry 191, 81 A.2d 322 (1950), approved in *Baron v. McCormick Transportation Company,* 11 Terry 502, 135 A.2d 140 (1957), *to the effect that usual exertion will suffice to make an injury accidental and compensable if a causally-connected preexisting physical weakness has not been shown.*" (Emphasis added.) 260 A.2d at 432.

 From the foregoing, these propositions follow as guidelines for decision of the instant case: (1) The rationale underlying the general conclusion of *Reynolds* having been abandoned in *Milowicki,* the unqualified rule there stated, requiring unusual-exertion in all infarction type cases, is overbroad and no longer the law. It must be so labelled expressly in order to put the matter to rest; and we hereby do so; (2) The Board's reliance upon *Reynolds* in this case is, therefore, misplaced and error; (3) The instant case is not governed by *Faline* because of the important factual differences; and (4) the problem before us here is not the type of heart attack involved, but rather the scope and meaning of the term "preexisting physical weakness", as used in the rule of *Milowicki.*

### III.

Mooney argues that "pre-existing" relates to the time when the condition arose. He contends that if the condition arose prior to his employment by Benson, the unusual-exertion standard applies; but if it arose after that employment began, the usual-exertion standard will suffice if the injury is shown to be causally related to the employment. Benson contends, on the other hand, that the unusual-exertion test applies wherever the employee has manifested symptoms of the condition at any time prior to the date of the incident giving rise to the claim.

We find neither position of the parties acceptable. The applicable rule of law is to be found in *Chicago Bridge and Iron Co. v. Walker,* Del.Supr., 372 A.2d 185 (1977). There we identified the four principle con-

cepts or legal theories, set forth in our Workmen's Compensation Act and cases, which support an award:

"Briefly and generally, a claimant is entitled to an award when:

(1) He proves that 'the injury happened at a fixed time and place and was attributable to a clearly traceable incident of . . . [his] employment', *Gray's Hatchery & Poultry Farms v. Stevens,* Del.Super., 7 Terry 191, 81 A.2d 322, 324 (1950); *Faline v. Guido and Francis DeAscanis & Sons,* Del. Supr., 192 A.2d 921, 924 (1963);

(2) He proves that 'unusual exertion' in the course of his employment aggravated a preexisting physical weakness, *Milowicki v. Post and Paddock, Inc.,* Del.Supr., 260 A.2d 430, 432 (1969); *Faline v. Guido and Francis DeAscanis & Sons,* supra at 924;

(3) He proves that he sustained a 'compensable occupational disease' as defined in § 2301(4), cf. *Air Mod Corporation v. Newton,* Del.Supr., 215 A.2d 434, 441 (1965);

(4) He proves that his work has had a cumulative detrimental effect on his physical condition, *General Motors Corporation v. McNemar,* Del.Supr., 202 A.2d 803, 806 (1964)."

372 A.2d at 187.

In *Chicago Bridge,* the Board applied Concept (1) to the facts of that case and denied the award for failure to sustain the burden of proof set forth in that standard. The Board there found, however, that "the claimant's work, admittedly heavy, gradually, over a period of time, took its toll on the claimant's health." We held that such factual finding required testing under Concept (4) and not Concept (1); and that Concept (4) includes a two-step test:

"(1) that [the claimant's] usual duties and work habits contributed to his condition, and (2) that such contributing factors were present on the day when he alleges that his right to compensation commenced." 372 A.2d at 188.

Concept (4) of *Chicago Bridge* was expressly based upon *General Motors Corp. v. McNemar,* Del.Supr., 202 A.2d 803 (1964). In *McNemar,* the employee was found to be in good health prior to the rupture of an aneurysm on the job, except for headaches experienced for three days prior to the employee's collapse. This Court found that the employee's condition developed during the course of employment and that an accident causally related to that employment occurred. We there stated:

"If the claimant has successfully shown that his usual duties and work habits contributed to the injury and can show the existence of such contributing factors on the day in question, the claimant has satisfied his obligation under our Workmen's Compensation statute." 202 A.2d at 806.

■ Upon the authority of *McNemar* and *Chicago Bridge,* we hold that under the facts and circumstances of this case, the Board erred as a matter of law in applying the pre-existing physical-weakness unusual-exertion test covered by Concept (2) of *Chicago Bridge.* In the instant case, the Board found (1) that there was a causal connection between Mooney's heart attack and his employment; and (2) that any pre-existing heart condition related back, at best, only to the November 17, 1979 episode of pain and not to any time prior to the commencement of Mooney's employment with Benson on November 1, 1979. We hold that the application of the unusual-exertion test of Concept (2) of *Chicago Bridge* was inappropriate in light of such findings.

On the other hand, the facts and circumstances of this case, as found by the Board, fit Concept (4) neatly: Benson's work "had a cumulative detrimental effect on his physical condition" in that "his usual duties and work habits contributed to his condition", and "such contributing factors were present on the day when he alleges that his right to compensation commenced".

We conclude, therefore, that this case must be reversed and remanded for reconsideration under the correct rule of law, i.e.,

Concept (4) of *Chicago Bridge* and the usual-exertion test.

IV.

When this record is viewed in the light in which we see it, we are of the opinion that the issue of "cumulative detrimental effect" was actually before the Board in this case, although not sufficiently labelled as such perhaps. While it appears that Mooney may have been more precise in focusing upon *Chicago Bridge* Concept (4) in the presentation of his case before the Board, we conclude that under all the facts and circumstances of the case he should have been permitted by the Superior Court to raise that issue upon appeal, his failure to classify his position in the precise language of *Chicago Bridge* notwithstanding.

\* \* \*

Accordingly, the judgment of the Superior Court is REVERSED and the case remanded for further proceedings consistent herewith.