**Daniel J. BRAMBLE, Claimant,**

v.

**STATE BOARD OF PENSION TRUSTEES, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: April 21, 1989.
Decided: June 23, 1989.

Thomas Herlihy, III, Herlihy, Harker & Kavanaugh, Wilmington, for claimant.

Ann Marie Johnson, Del. Dept. of Justice, for defendant.

TAYLOR, Judge.

This is an appeal from a determination of the State Board of Pension Trustees [Board] denying service-related disability pension benefits to Daniel J. Bramble [claimant][1].

Claimant became a member of the Delaware State Police in February of 1958. During his career with the State Police, claimant served in various capacities, including Road Trooper, Detective and Public Information Office. In July of 1972 claim-

---

1. Claimant died of a heart attack on January 16, 1984. His widow, Carole D. Bramble, was sub- stituted for him by Order of this Court on March 9, 1984.

ant was appointed Internal Affairs Officer ("IAO"). As IAO, claimant was responsible for investigating complaints against his fellow officers. Claimant was the only full-time IAO and handled a large caseload. In August of 1974, claimant was given the additional assignment of Department Public Information Officer in connection with a homicide.

On August 17, 1974, claimant was vacationing in Lewes, Delaware. Because of his heavy caseload, claimant intended to work during the "spare" moments of his vacation. Claimant remained in contact with the police department during his vacation because of his assignment as Public Information Officer. On August 18, 1974, while fishing with his son, claimant suffered a coronary infarction, or heart attack.

Claimant was 40 years old at the time he had his heart attack. Up until that time, there was no indication that claimant was suffering from heart disease. In February of 1973 and February of 1974 claimant passed electrocardiogram tests. There is no history of heart disease in his family. Claimant was not overweight at the time of his heart attack. Claimant did smoke in excess of one pack of cigarettes a day.

Claimant recuperated from his heart attack and returned to work in late September of 1974. Upon his return, claimant was assigned a series of "easy" tasks. In January of 1975, claimant was reassigned to work as the Public Information Officer. Soon thereafter, claimant began experiencing chest pains. Claimant attempted to alleviate the pain through the use of medication, but this proved unsuccessful. In September of 1975, upon the advice of his doctor, claimant retired from the police force.

Claimant applied to the Board for a service-related disability pension pursuant to 11 *Del.C.* § 8324, which provides:

Any former, present or future member of the ... State Police, who has heretofore received or who may hereafter receive permanent injuries in the performance of his duties, shall upon certification of a physician selected by the Board of Pension Trustees or by the injured person, be entitled to receive a pension equal to one half of his salary at the time the injury was received; but no such pension shall be paid as long as such person is regularly employed as a State Policeman.... [and if] the Board of Pension Trustees shall determine by resolution passed by at least a majority of the members of the Board of Pension Trustees, ... whether such member is entitled to the benefits of this subchapter, and if so determined, such member shall be retired upon a pension equal to three fourths of his salary at the time of his retirement....

Under this provision, a police officer who must retire as a result of a service-related injury or disease is entitled to pension benefits equal to three-fourths of his salary. The statute is silent, however, as to the exact relationship which must exist between the officer's injury or disease and the officer's job in order to be entitled to the benefits under that provision.

It is undisputed that claimant had heart disease and suffered a heart attack while he was an officer. The issue before the Board was whether claimant's heart disease and heart attack constituted "permanent injuries [received] in the performance of his duties" as used in the quoted provision.

Claimant's position is that the stress of the job which he was doing for the State Police brought about his heart attack, and therefore, it was an injury received in the performance of his duties. Claimant and various members of the Delaware State Police testified before the Board concerning the stressful nature of police work in general, and the large caseload and high level of stress associated with claimant's position as IAO. Claimant also presented to the Board various medical articles on the relationship between job stress and heart attacks. Claimant was examined by four different doctors and the findings of these doctors were conveyed to the Board.

Dr. Paul C. Pennock, M.D., claimant's personal physician, testified before the Board that there was a "causal relationship" between claimant's heart condition

and the stress of his job, particularly his assignment as IAO.

At the request of the Board, claimant was examined by A. Henry Clagett, Jr., M.D., a specialist in cardiovascular disease. In a letter to the Board dated August 31, 1974, Dr. Clagett conveyed the findings of his examination to the Board:

In conclusion, it is my opinion that [claimant's] job did not cause his heart attack. I feel that there was an unusual amount of stress connected with his work and it is reasonable to assume that his work may have been a precipitating factor in the timing of his heart attack. I want to be clearly understood, however, that I believe [claimant] would have had a heart attack at sometime regardless of the stress of his job but it is reasonable to think that the events leading up to August 18, 1974 were such that he had the attack at that time rather than at a later date.

Claimant was also examined by a psychologist, Dr. William H. Kroes. In a letter dated March 8, 1978 to claimant's counsel, Dr. Kroes stated:

I do not feel it is necessary to belabor the point that this man indeed had a great deal of job stress. Possibly all I can add is that from my experience with police officers I would say this man had a heavier degree of stress than is typical for the average police officer. The question here is what is the relationship between stress and coronary heart disease. As stated, it is my opinion that the majority of modern researchers would conclude that there is a strong relationship between coronary heart disease and stress. It is my own opinion that stress is the major precipitating factor more important than the more typical risk factors.

Dr. Kroes had claimant examined by Dr. Alvin Markovitz, M.D. Dr. Markovitz's report of his examination was presented to the Board. In the report, Dr. Markovitz states:

It is my medical opinion that the severe stress of his occupation was a strong contributing factor in his heart dis-ease.... We are talking about a relatively young man whose only non-industrial risk factor was the fact that he smoked occasionally and I feel that this man's stress of his occupation was probably a prime factor in his heart disease.

The Board denied claimant a service-related disability pension under Section 8324, finding that claimant had not proved that his injury was service-related. The Board apparently relied upon the opinion of Dr. Clagett that claimant's job did not "cause" his heart disease and resulting heart attack. As stated by the Board in its brief, "[t]he Board long has construed Section 8324 to require that the injury ... be caused by the officer's job performance." The Board did, however, conclude that claimant retired because of a non service-related injury or disease and awarded him pension benefits equal to one half his salary under 11 *Del. C.* § 8326. Claimant appeals the findings of the Board arguing that the construction of Section 8324 requiring that his job be the "cause" of his heart disease and resulting heart attack is too narrow.

In deciding this appeal, this Court starts from the proposition that pension statutes designed to benefit police officers serve a benefit to both the public and the police and to that end "[t]hey are to be liberally construed and ambiguities resolved in favor of those to be benefitted." *Miller v. City of Wilmington*, Del.Ch., 267 A.2d 477, 479 (1970).

In this case, the Board required claimant to prove that his job "caused" his heart disease. Ordinarily, causation of an injury or disease can be traced to a specific act or event. According to the testimony of the doctors who testified in this case, medical science has not determined the "cause" of heart disease, but has only identified "risk factors" common to most patients with heart disease. The risk factors, as identified by Dr. Clagett in his report to the Board, are Age (increased risk of heart disease with age), Sex (males predominate), Family history of heart disease, Elevated sedrum lipids, High calorie diet, Arterial hypertension, Carbohydrate intolerance, Obesity, Sedentary living, Personality type

and Psychosocial tension. In addition, Dr. Clagett identified job stress as a precipitating factor in the timing of a heart attack.[2]

The only statutory language applicable to State Police first employed before 1980, as was this claimant, is 11 *Del.C.* § 8324. In seeking to give meaning to that section, the Court notes the action of the General Assembly in 1980. 62 Del.Laws Ch. 361 provided a new standard for State Police disability pension, which by its terms applies only to police officers hired after July 1, 1980. The significant portion of this amendment is 11 *Del.C.* § 8365(a), which provides:

> A member who suffers a partial or total disability resulting from an individual and specific act the type of which would normally occur only while employed as a police officer shall be eligible for a duty connected disability pension. If such act involves a traumatic event which directly causes an immediate cardiovascular condition which results in partial or total disability, the member shall be eligible for a partial or totally duty-connected disability pension.

■ The language of Section 8365(a) is of interest in interpreting Section 8324. Section 8365(a) sets forth a very restrictive standard of eligibility for a "duty connected disability pension", namely, "disability resulting from an individual and specific act of the type which would normally occur only while employed as a police officer". Language of that type could be designed to curtail a prior practice of granting disability pension based on a less restrictive standard or to permit a disability pension in situations where none had been previously permitted. It is noted that by its terms, this amendment applies only to officers hired after July 1, 1980. If that amendment had been intended to liberalize benefits to police, logically, it would have been applied to all existing police (as has been the legislative treatment of the many increases in police benefits) and not just to newly employed police. On the other hand, if the object of the amendment was to curtail benefits which had theretofore been available to police, limiting that restriction to subsequently hired police permitted the previous standard to continue in effect for existing police. Applying the above considerations and the policy considerations of *Miller v. City of Wilmington, supra,* I conclude that the enactment of Section 8365(a), limited only to post 1980 recruits, is a legislative recognition that the existing (pre-1980) disability pension policy was more liberal than that provided in Section 8365(a) and that fairness required that the existing policy should remain in effect for those who had worked under the pre–1980 statute and that the limitations relating to heart disabilities in Section 8365(a) reduced pension availability from what had previously existed.

Claimant's right to disability pension is governed by 11 *Del.C.* § 8324, which permits a pension to a police officer who "receive[s] permanent injuries in the performance of his duties".

There are no reported Delaware cases interpreting 11 *Del.C.* § 8324 or § 8365. To resolve this issue the Court is aided by reference to judicial interpretation of the Workmen's Compensation Statute, 19 *Del.C.* Ch. 23. While the Worker's Compensation statute serves a different need than the Pension statute, in each case a claimant's entitlement to benefits is contingent upon the claimant's showing that his injury or disease is job related.

The Board cites *Miller v. City of Wilmington*, Del.Ch., 285 A.2d 443 (1971), *aff'd.*, Del.Supr., 293 A.2d 574 (1972) for the proposition that the receipt of a disability pension is independent of the receipt of workmen's compensation benefits, and therefore, reference to workmen's compensation cases to interpret Section 8324 is improper. The Board's argument is misplaced. *Miller* stands for the proposition

---

**2.** Dr. Clagett stated in his report that there are "some authorities" who believe that emotional stress and severe overwork with fatigue can be a precipitating factor in heart disease. Dr. Clagett's conclusion that it was "reasonable" to as-sume that claimant's job was a precipitating factor in the timing of his heart attack, indicates that Dr. Clagett is in agreement with these authorities.

that receipt of worker's compensation benefits does not bar or reduce claimant's right to pension benefits in the absence of a specific statutory provision for that. It does not prevent this Court from applying the judicially created concepts for determining if a claimant's injury is related to his employment to the pension statute at issue in this case.

Under 11 *Del.C.* § 8324, pension benefits are available to a State Policeman "who may hereafter receive permanent injuries in the performance of his duties". In the case of worker's compensation the statutory standard for benefits is "personal injury sustained by accident arising out of and in the course of the employment". 19 *Del.C.* § 2301(15) and § 2304. While the language in the two statutes is different, the objective of each is to provide compensation for disabilities related to the job. Neither statute contains any language specifically addressing disability resulting from a heart attack. Since there is no reported decision involving 11 *Del.C.* § 8324 which is of assistance in resolving the issue presented here, it is appropriate that this Court consider the standards which the Supreme Court has developed for determining under what conditions worker's compensation would be available where disability was caused by a condition similar to that involved here.

██ Under the Worker's Compensation statute, a claimant can be entitled to benefits in any one of four ways:

(1) he proves that "the injury happened at a fixed time and place and was attributable to a clearly traceable incident of ... [his] employment"; or

(2) he proves that "unusual exertion" in the course of his employment aggravated a preexisting physical weakness; or

(3) he proves that he sustained [an occupational disease arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during employment]; or

(4) he proves that his work has had a cumulative detrimental effect on his physical condition. [Citations omitted.]

*Chicago Bridge & Iron Co. v. Walker,* Del.Supr., 372 A.2d 185, 187 (1977). That case involved a gradual deterioration of a claimant's shoulder and back. In *Mooney v. Benson Management Co.,* Del.Supr., 466 A.2d 1209 (1983) the alternative tests enumerated above were held to apply to heart related disabilities. Therefore, the right to receive compensation for injury resulting from heart related disabilities can be based on a showing of any one of the four enumerated standards, one of which is cumulative detrimental effect.

██ Based upon the principles discussed above, namely, that pension laws should be given liberal construction favorable to the pensioner, and that the Delaware decisions integrating the workmen's compensation law in this subject area are a reasonable analogy to be applied, and the legislative history of the State Police pension law, I conclude that the standard applied in *Chicago Bridge & Iron Co. v. Walker, supra,* and *Mooney v. Benson Management Co., supra,* is the proper standard which the Board must apply in this case.

Claimant contends that this claim is supported by evidence invoking the preexisting physical weakness/unusual exertion test and the cumulative detrimental effect test.

██ To establish entitlement to benefits under the preexisting physical weakness/unusual exertion test, a claimant must show that he had a physical weakness which preexisted his employment and that this condition was aggravated by some unusual exertion on the job which was over and above the normal exertion used in his employment. *Chicago Bridge & Iron Co. v. Walker,* 372 A.2d at 187; *Milowicki v. Post and Paddock, Inc.,* Del.Supr., 260 A.2d 430, 432 (1969); *Faline v. Guido and Francis DeAscanis & Sons,* Del.Supr., 192 A.2d 921, 924 (1963).

██ To establish entitlement to benefits under the cumulative detrimental effect test, the claimant must establish (1) that

his usual duties and work habits contributed to his condition, and (2) that such contributing factors were present on the day when he alleges that his right to compensation commenced. *Mooney v. Benson Management Co.*, 466 A.2d at 1212; *Chicago Bridge & Iron Co. v. Walker*, 372 A.2d at 188. "The primary focus under the test is whether the job contributed to the employee's condition of disability. The test is not whether the job was the sole cause of the condition, but whether it contributed to the condition." *Hall v. Chrysler Corp.*, Del.Super., C.A. No. 84A–JL–5, Taylor, J. (Order), 1986 WL 6709 (May 14, 1986). *See also, Specialty Restaurants, Inc. v. Buckson*, Del.Super., C.A. No. 88A–SE–9, Taylor, J. (Order), 1989 WL 16971 (February 2, 1989); *Chrysler Motors Corp. v. Hall*, Del. Super., C.A. No. 87A–MR–4, Bifferato, J. (Letter Opinion), 1988 WL 15312 (February 12, 1988), *aff'd.*, Del.Supr., 548 A.2d 498 (1988).

On an appeal to this Court from an Administrative Agency, this Court must uphold the determination of the Agency unless the Agency acted arbitrarily, committed an error of law, or made findings of fact unsupported by substantial evidence. *Olney v. Cooch*, Del.Supr., 425 A.2d 610 (1981); *Kreshtool v. Delmarva Power and Light Co.*, Del.Super., 310 A.2d 649 (1973). In the present case, the Board presupposed that there was a single or sole cause and on that basis found that claimant failed to prove that his job "caused" his heart disease and resulting heart attack. The Board did not consider claimant's entitlement to benefits under the standard enunciated in *Chicago Bridge & Iron Co. v. Walker, supra,* and *Mooney v. Benson Management Co., supra,* and did not give effect to the holdings that the employee's duties and work habits will warrant the granting of benefits if they contributed to his condition. Therefore, the case will be remanded to the Board with direction to apply the correct standards as discussed herein.

For the foregoing reasons, the decision of the Board is REVERSED and the case is REMANDED for further proceedings consistent with this decision.