William R. DUVALL, Jr., Employee
Below, Appellant,

v.

CHARLES CONNELL ROOFING,
Employer Below, Appellee.

Supreme Court of Delaware.

Submitted: April 26, 1988.
Decided: Sept. 12, 1989.

Sidney Balick of Sidney Balick & Associates, Wilmington, for appellant.

Timothy A. Casey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en Banc.

MOORE, Justice.

For over twenty-five years decisions of this Court have engrafted the "unusual exertion" rule upon our Workmen's Compensation Law. Thus, an employee with a "pre-existing physical weakness", whose employment aggravates that condition, is denied compensation unless it can be shown that the worker was engaged in some form of unusual exertion at the time of a job related injury.[1] Today we reexamine this rule of law and abandon it.

1. The principal cases under which this rule was established and applied are *Faline v. Guido and Francis DeAscanis & Sons,* 56 Del. 202, 192 A.2d 921 (1963) (heart attack); *Reynolds v. Continental Can Co.,* Del.Supr., 240 A.2d 135 (1968) (heart attack), but see, *Mooney v. Benson*

William Duvall appeals a decision of the Superior Court affirming the Industrial Accident Board's denial of workmen's compensation benefits allegedly due him because of a back injury sustained while performing his routine duties for Charles C. Connell Roofing. The Board denied Duvall benefits based upon proof that he had an unknown pre-existing back condition at the time of injury, and upon his subsequent inability to prove unusual exertion as required by *General Motors Corp. v. Veasey*, Del.Supr., 371 A.2d 1074 (1977). We believe that abandoning the unusual exertion rule and its patent inequities is consistent with the statutory principle that compensation be paid "for personal injury or death by accident arising out of and in the course of employment." 19 *Del.C.* § 2304 (1985). In the absence of contrary legislation, therefore, we adopt the "usual exertion" rule. Under this principle, an injury is compensable if the ordinary stress and strain of employment is a substantial cause of the injury. Accordingly, we reverse.

### I.

■ William Duvall is 35 years old, and was a roofer for most of his adult life. On May 16, 1985, while unloading an eighty pound bundle of roof shingles, Duvall experienced pain in his back. He consulted an orthopedic surgeon, who diagnosed Duvall's condition as an acute lumbosacral sprain combined with spondylolisthesis, a congenital weakness in the bones of the back which has no symptoms until triggered by stress on the back.

Duvall filed a petition with the Industrial Accident Board to determine compensation due. After a hearing the Board denied Duvall's petition. Specifically, the Board found that Duvall had a pre-existing back condition and that the injury was not the result of "unusual exertion" as required by *Veasey*.

Duvall appealed to the Superior Court, which affirmed the Board's decision. The court determined that substantial evidence existed in the record to support the Board's findings of "pre-existing condition" and a lack of "unusual exertion."

Duvall contends that substantial evidence did not exist to support these findings. Alternatively, he urges us to abandon the unusual exertion test of *Veasey*. While we agree with the Superior Court's findings of a pre-existing condition and a lack of unusual exertion, we nevertheless reverse as a matter of law by abandoning the unusual exertion standard.

### II.

It is fundamental that the two primary purposes of the Delaware Workmen's Compensation Law, 19 *Del.C.* Ch. 23 (1985), are to assure prompt compensation of injured employees without regard to fault and to obviate the need for litigation. *Champlain Cable Corp. v. Employers Mut. Liab. Ins. Co.*, Del.Supr., 479 A.2d 835, 840 (1984). Thus, 19 *Del.C.* § 2304 (1985) provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

Injury for which compensation must be paid and accepted is defined by 19 *Del.C.* § 2301(12) (1985) as follows:

> 'Injury' and 'personal injury' mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment.

*Management Co.*, Del.Supr., 466 A.2d 1209 (1983) (refusing to apply unusual exertion test to heart condition that arose during course of employment); *Milowicki v. Post and Paddock, Inc.*, Del.Supr., 260 A.2d 430 (1969) (ruptured disc); *Chicago Bridge & Iron Co. v. Walker*, Del.Supr., 372 A.2d 185 (1977) (herniated disc); and *General Motors Corp. v. Veasey*, Del.Supr., 371 A.2d 1074 (1977) (lumbosacral sprain).

While the law is not a general health insurance statute, *Air Mod Corp. v. Newton*, 59 Del. 148, 215 A.2d 434, 442 (1965), it should be interpreted liberally to fulfill its intended compensation goal under § 2304. The unusual exertion rule, created solely by judicial decisions, represents a peculiar but marked limitation upon that endeavor.

This stems from the Court's narrow interpretation of the term "accident" under 19 *Del.C.* § 2304. Thus, in *Faline v. Guido and Francis DeAscanis & Sons*, 56 Del. 202, 192 A.2d 921 (1963), compensation was denied to a heart attack victim because his injury was due in part to a pre-existing coronary disease. The Court held that because the injury occurred while the worker performed his ordinary routine, notwithstanding its considerable emotional and physical stress, his heart attack was only an aggravation of a known pre-existing idiopathic disease, and not an unexpected "injury by accident". *Id.* 192 A.2d at 924. Compensation was due only if the worker exerted himself beyond the level normally required by the "ordinary routine of his job." *Id.*

Originally, this usual-unusual exertion distinction was limited to infarction-type heart cases, *Reynolds v. Continental Can Co.*, Del.Supr., 240 A.2d 135, 136 (1968) (overruled by *Mooney v. Benson Management Co.*, 466 A.2d 1209 (1983), but thereafter was expanded to include back injuries, *Milowicki v. Post and Paddock, Inc.*, Del.Supr., 260 A.2d 430, 431 (1969). Finally, in *Veasey*, 371 A.2d at 1075, the unusual exertion rule was adopted for all cases involving a job related aggravation of a pre-existing condition. Because the unusual exertion rule is both legally unsound and inequitable, we now abandon it. To the extent that *Faline* and *Veasey* are inconsistent with this holding, we expressly overrule them and their progeny.

## III.

In abandoning the unusual exertion rule Delaware joins a substantial majority of states which have done so.[2] There are two primary reasons for this shift in the law, one theoretical, the other practical.

The fallacy of the unusual exertion rule is its presumption that only an unusual exertion can produce an accidental result. *See* 1B A. Larson, *Larson's Workmen's Compensation Law* § 38.62 (1987). This simply is not true. Under 1 *Del.C.* § 303 (1985) we are required to construe statutory provisions "according to the common and approved usage of the English language." Our Workmen's Compensation Law does not define the term "accident" as used in 19 *Del.C.* § 2304. Nor is it generally considered to be a technical word with a peculiar and appropriate meaning. *Webster's* defines "accident" as: "An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." *Webster's New International Dictionary*, (2d Ed.1950). When there is an unusual exertion followed by an injury, the cause of the harm is no more unexpected than if the injury was produced by some form of usual exertion. The resulting injury is unexpected regardless of the endeavor, and there is no rational basis for distinguishing between the two. *See generally* 1B A. Larson, *supra*, at § 38.62.

Likewise, Delaware's adoption of the unusual exertion test for a pre-existing condition is based on the erroneous notion that an injury is less "accidental" if partially caused by such condition. Although a worker with a pre-existing condition may be more prone to injuries relating to that state, a pre-existing condition alone will not produce an injury. Some other contributing factor must be present. When that factor is the everyday stress and strain of a worker's job, he or she should not be denied compensation on a theory which

---

**2.** The leading treatise on the subject counts at least thirty-five jurisdictions which employ the usual exertion rule in "breakage" cases, i.e. those where a part of the body ruptures or herniates, while only five deny compensation for usual exertion in those cases. For all other cases (except those involving exposure or diseases arising from exposure) twenty-six jurisdictions require only usual exertion while ten require something more. 1B A. Larson, *Larson's Workmen's Compensation Law* § 38.71 (1987). Thus a substantial majority of jurisdictions apply the usual exertion test.

finds no support in the statutory enactments of the General Assembly. There is a causal connection between the unexpected injury and the work effort which produced it. That causal connection is as much a form of accident as any other to be encountered in a workplace, and should not be a basis for the denial of compensation. This interpretation is entirely consistent with the earlier views of this Court in *General Motors Corp. v. McNemar*, Del.Supr., 202 A.2d 803, 807 (1964), in which Chief Justice Terry stated:

> [T]he fact that a claimant suffers from a pre-existing physical defect will not preclude the award of compensation if the conditions of employment cause a sudden and violent acceleration and deterioration of the defect....
>
> \* \* \* \* \* \*
>
> ... A sudden rupture of an aneurysm may properly be considered a personal injury within the purview of 19 *Del.C.* Sec. 2301.... Such injuries, when caused by the physical strain or emotional stress attendant upon the usual duties of employment, are compensable under the Workmen's Compensation Law.

Even if we ignore this fundamental weakness of the unusual exertion rule, we are nevertheless faced with the impracticability of its application. First, as Larson observes, what is "usual" to an employee is not easy to identify. 1B A. Larson, *supra*, at § 38.63. Most workers are assigned a variety of tasks requiring a variety of skills and levels of exertion. Second, application of the unusual exertion rule produces arbitrary, inequitable and often ridiculous results. For example, a worker with a pre-existing condition, who is injured while routinely lifting a heavy object as a part of his "usual" employment, would not recover. Yet, a worker with the same condition, whose employment requires no lifting, could recover for the "unusual" lifting of even a very light object. Certainly, in both cases the lifting substantially contributed to the unexpected injury, but only one of the workers recovers.

In recent years we have seriously eroded the rule in heart attack cases, *Mooney v.*

*Benson Management Co.*, Del.Supr., 466 A.2d 1209, 1210–12 (1983), and in other pre-existing condition cases when unusual exertion is accompanied by unexpected circumstances. *Mr. Pizza, Inc. v. Schwartz*, Del.Supr., 489 A.2d 427 (1985) (unusual exertion accompanied by slip and fall). However, such piecemeal changes do not correct the basic flaw in the rule. If anything they may tend to foster equally undesirable irregularities.

## IV.

What then shall be the rule? Until now Delaware workmen's compensation awards have been governed by the general scheme summarized in *Chicago Bridge & Iron Co. v. Walker*, Del.Supr., 372 A.2d 185 (1977):

> Briefly and generally, a claimant is entitled to an award when:
>
> (1) He proves that "the injury happened at a fixed time and place and was attributable to a clearly traceable incident of ... [his] employment", *Gray's Hatchery & Poultry Farms v. Stevens*, Del.Super. [46 Del. 191], 7 Terry 191, 81 A.2d 322, 324 (1950); *Faline v. Guido and Francis DeAscanis & Sons*, Del.Supr. [56 Del. 202], 192 A.2d 921, 924 (1963);
>
> (2) He proves that "unusual exertion" in the course of his employment aggravated a pre-existing physical weakness, *Milowicki v. Post and Paddock, Inc.*, Del.Supr., 260 A.2d 430, 432 (1969); *Faline v. Guido and Francis DeAscanis & Sons*, supra [192 A.2d] at 924;
>
> (3) He proves that he sustained a "compensable occupational disease" as defined in § 2301(4), cf. *Air Mod Corporation v. Newton*, Del.Supr. [59 Del. 148], 215 A.2d 434, 441 (1965);
>
> (4) He proves that his work has had a cumulative detrimental effect on his physical condition, *General Motors Corporation v. McNemar*, Del.Supr. [57 Del. 511], 202 A.2d 803, 806 (1964).

*Id.* at 187.

Larson proposes the following test:

> If there is some personal causal contribution *in the form of a [pre-existing*

*weakness]*, the employment contribution must take the form of an exertion greater than that of nonemployment life.... Note that the comparison is not with *this employee's* usual exertion *in his employment* but with the exertions of normal *nonemployment* life of this or any other person.

If there is no personal causal contribution, that is, if there is no prior weakness or disease, *any* exertion connected with the employment and causally connected with the collapse as a matter of medical fact is adequate to satisfy the *legal* test of causation. This is the heart-case application of the actual risk test: *This* exertion in fact causally contributed to *this* collapse.

In both situations, with or without prior personal weakness or disease, the claimant must also show that *medically* the particular exertion contributed causally to the heart attack.

1B A. Larson, *supra*, § 38.83(b), at 7–279 (emphases in original).

Adoption of this rule generally, and its application here, raises several immediate problems which may defy reasonable solution. First is the matter of definition. Who is the average person in "normal" non-employment life? Second, how is the comparable level of activity in "normal" non-employment life to be determined, and by whom? How does one compare the level of exertion in moving or lifting heavy objects on the job versus strenuous, but "normal" non-employment activities? To what extent is one's personal life to be dissected to fit the equation? While undoubtedly well-intended, this proposal seems unworkable. *See generally* Comment, Heart Attacks and the Pennsylvania Workmen's Compensation Act: Establishing the Causal Relationship Between Employment and Injury, 81 Dick.L.Rev. 111 (1976).

In our opinion the better principle to follow is the "usual exertion" rule, which provides that irrespective of previous condition, an injury is compensable if the ordinary stress and strain of employment is a substantial cause of the injury. See *Mr.*

*Pizza, Inc.*, 489 A.2d at 433 (Moore, J., concurring). The statutory language of 19 *Del.C.* § 2304 certainly accommodates this interpretation. The term "by accident" encompasses an unintended cause or result, and is consistent with the liberal interpretation of a compensation statute which generally confines the worker to its protections.

Ironically, Delaware courts have consistently applied the usual exertion rule except, generally, in those cases involving pre-existing conditions. *Gray's Hatchery & Poultry Farms, Inc. v. Stevens*, 46 Del. 191, 81 A.2d 322 (1950), approved in *Barone v. McCormick Transp. Co.*, 50 Del. 502, 135 A.2d 140, 142 (1957). *See also Milowicki*, 260 A.2d at 432. Even in the face of a pre-existing condition, this Court affirmed an award to an employee who suffered a ruptured aneurysm of an artery during the performance of his usual duties on an automotive assembly line. *McNemar*, 202 A.2d at 807. There, the Court stated that where the "usual conditions of employment" contributed to, and caused the injury in question, an award was proper. Thus, this Court disregarded the unusual exertion rule announced less than a year before in *Faline*. *See McNemar*, 202 A.2d at 805–07. The somewhat strained construction which the Court later placed on *Faline* and *McNemar* in an effort to reconcile them was that *Faline* involved an "infarction type" heart case (requiring unusual exertion to recover compensation), whereas *McNemar* involved an unknown, but pre-existing, aneurysm of an internal carotid artery (in which case no unusual exertion was required for a monetary award). *See Reynolds*, 240 A.2d at 136–37. Apparently, this distinction was not without precedent in some other jurisdictions. *Id.* at 137. While *Reynolds* spoke of *McNemar* as applying the "usual exertion rule", *id.* at 136, later in *Chicago Bridge & Iron*, the Court attempted a new distinction of *McNemar* by calling it a "cumulative detrimental effect" case. *Chicago Bridge & Iron*, 372 A.2d at 187. However, *McNemar* used no such term. It is, as *Reynolds* correctly noted, a "usual" exertion case. Finally, in *Mooney*, we abandoned the so-called "infarction" distinction and applied

the rationale of *McNemar* to a heart attack case. *Mooney*, 466 A.2d at 1213. *Mooney* spoke of the claim as fitting "neatly" into the concept of *McNemar*. *Id.* Thus, with the foregoing in mind, a reading of *McNemar* can lead to but one conclusion—the Court in *Mooney* adopted the usual exertion rule *sub silentio*. We recognize that the usual exertion rule is not problem free, but it is a fairer standard of recovery, totally consistent with our law, for those injured in the course of their employment.

Since we are abrogating prior case law, this revised standard will apply to: (1) this case; (2) any case now pending on appeal to this Court; (3) any case now pending in the Superior Court which has not yet been appealed but which may be eligible for appeal to this Court; (4) any case pending decision by the Industrial Accident Board which is eligible for appeal to the Superior Court and (5) any claim filed on or after the date of this decision.

We therefore reverse, and remand this case to the Superior Court with directions to remand to the Industrial Accident Board for further proceedings consistent herewith, including the entry of an appropriate award in claimant's favor.