PAUL VARGA, Claimant-Appellant, Appellant,
v.
GENERAL MOTORS, Employer-Appellee, Appellee.
No. 72, 2010.
Supreme Court of Delaware.
Submitted: April 1, 2010.
Decided: May 13, 2010.
Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 13th day of May 2010, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:
(1) The claimant-appellant, Paul Varga, filed an appeal from the Superior Court's January 20, 2010 order affirming the decision of the Industrial Accident Board (the "Board" or "IAB"), which denied him workers' compensation benefits. The employer-appellee, General Motors ("GM"), has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of the opening brief that the appeal is without merit.[1] We agree and affirm.
(2) The record reflects that, on October 28, 2008, Varga filed a Petition to Determine Compensation Due based on his claim that he sustained a work-related injury to his left hip while working on the assembly line at GM. Before retiring, Varga worked in the GM body shop for 24 years. His job for the last 3 years of his employment with GM was to bend down and wipe sealer off the inside of the car frames as they passed along the line. Varga claimed total disability benefits from October 1, 2008, medical expenses, attorney's fees and medical witness fees. GM disputed that Varga's left hip condition was causally related to his employment with GM. On February 25, 2009, a hearing on Varga's claims was held before the IAB.
(3) The transcript of the hearing reflects the following. The testimony of Varga's expert, Steven D. Grossinger, D.O., was presented by way of his deposition. Dr. Grossinger is board certified in neurology and pain management. Dr. Grossinger testified that an MRI of Varga's left hip performed on October 28, 2008 showed a tear of the labrum and a paralabral cyst. According to Dr. Grossinger, a labrum tear can be caused by repetitive bending and pivoting movements, which was consistent with Varga's job duties at GM. Varga was examined by Dr. Grossinger on February 9, 2009. At that time, Dr. Grossinger did a physical examination and an EMG to determine whether there was any associated nerve damage. At the time of the examination, Dr. Grossinger's technician made a notation that Varga stated he was cleaning the bottom of a car in December 2007 when he felt a tear in his left hip. Dr. Grossinger's opinion, within a reasonable degree of medical probability, was that Varga's left hip problem was causally related to his employment at GM.
(4) Varga testified that he is 52 years old and worked for GM for 29 years, 24 of which were on the assembly line. He retired from GM on June 1, 2008 as part of a buyout program. He also received a benefits commutation of $150,000 in connection with low back and shoulder injuries sustained on the job. Varga testified that he performed the sealer job on the assembly line for the last 3 years of his employment with GM. He denied that his left hip pain was attributable to any one incident and characterized it as a gradual development over time. He denied that he had told Dr. Grossinger's technician that, in December 2007, he had felt a tear in his left hip. Varga testified that he sustained a low back injury in February 2007 and, as a result, was off work until October 2007. He was laid off in December 2007, but never returned to work. Varga testified that he did not realize he had hip pain until his low back pain began to subside with physical therapy. He saw Dr. Bandera for left hip pain in September 2008. An MRI performed at that time showed a tear of the labrum in the left hip. Varga testified that the pain associated with his low back, which radiated down his left hip into his foot, and the pain associated with his left hip, which radiates down to his knee, are very different.[2]
(5) Jerry Case, M.D., testified, by way of his deposition, on behalf of GM. Dr. Case is a board certified orthopedic surgeon. He examined Varga on May 21, 2008 and on January 19, 2009 at the request of GM. Dr. Case testified that, on May 21, 2008, Varga was complaining of low back, but not hip, pain. He stated that his examination of Varga on January 19, 2009 revealed an overweight man who walked with a limp on his left side. He was tender over the lateral aspect of the hip and had decreased range of motion in that area. Dr. Case testified that he believed there was internal derangement of the left hip, but was unsure of the specifics because he had no MRIs to review at that time. He stated that the two most common types of hip joint abnormality are degenerative arthritis or aseptic necrosis. Upon a subsequent review of Varga's 2008 MRI, Dr. Case stated that there was a labral tear most probably caused by normal wear and tear and a paralabral cyst indicative of degenerative changes in the hip socket. Dr. Case testified that, in his opinion within a reasonable medical probability, Varga's hip condition is not causally related to his employment with GM.
(6) In this appeal, Varga raises several issues that may fairly be summarized as follows: a) the attorney who represented him at the Board hearing did not present documents, records and arguments that were available to him and essential to the case; and b) the Board lacked substantial evidence for its ruling that GM's expert was more credible than his own expert. Varga requests that this Court grant him a new hearing with a new attorney who will present the evidence that should have been, but was not, presented at the original hearing.
(7) On a petition to determine compensation due, the claimant has the burden of proving by a preponderance of the evidence that his employment was "a substantial cause" of his injuries.[3] In an appeal from the Superior Court's affirmance of a decision of the IAB, this Court examines the record for errors of law and determines whether substantial evidence exists to support the Board's findings of fact and conclusions of law.[4] Substantial evidence amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] This Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[6] The Board has the authority to determine which of two conflicting expert opinions is the more credible.[7] Errors of law are reviewed de novo.[8] In the absence of legal error, the standard of review for a Board's decision is abuse of discretion.[9]
(8) In its decision denying Varga's petition, the Board observed that the parties had presented conflicting opinions on causation. Dr. Grossinger opined that the repetitive bending and pivoting movements required by Varga's work on the assembly line resulted in the labral tear in the left hip, as reflected on the 2008 MRI. Dr. Case, while agreeing that Varga has a labral cyst and a possible labral tear, did not relate those conditions to Varga's work, but, rather, to degenerative changes and normal wear and tear. The Board went on to analyze Varga's testimony, stating that it lacked consistency and, therefore, credibility regarding how and when his left hip problems began. Moreover, without a clear date for the onset of the alleged hip injury, it was not possible to determine how long Varga had worked in his position as a sealer prior to the onset of his symptoms. As a result of the inconsistencies in Varga's testimony, the Board found that there was an insufficient factual basis for Dr. Grossinger's opinion that Varga's injury was work-related. In its order affirming the decision of the Board, the Superior Court correctly stated that it was bound by the Board's findings on Varga's credibility and, ultimately, its conclusion that Dr. Grossinger's opinion on causation was unreliable. Because we find no error or abuse of discretion on the part of the Board in denying Varga's petition for compensation due, and no error or abuse of discretion on the part of the Superior Court in affirming the Board's decision, we conclude that the Superior Court's judgment must be affirmed.[10]
(9) It is manifest on the face of the opening brief that the appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.
NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.
NOTES
[1] Supr. Ct. R. 25(a).
[2] Michelle Johnson, a co-worker of Varga's, testified that, in the summer of 2006, Varga complained that his left hip was hurting. He was examined at the medical facility at the GM plant and then returned to work.
[3] Duvall v. Charles Connell Roofing, 564 A.2d 1132, 1136 (Del. 1989).
[4] Histed v. E.I. DuPont de Nemours & Co., 621 A.2d 340, 342 (Del. 1993).
[5] Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981).
[6] Johnson v. Chrysler Corp., 213 A.2d 64, 66-67 (Del. 1965).
[7] DiSabatino v. Wortman, 453 A.2d 102, 105-06 (Del. 1982).
[8] Person-Gaines v. Pepco Holdings, Inc., 981 A.2d 1159, 1161 (Del. 2009).
[9] Id.
[10] We decline to address Varga's claim, raised for the first time in this appeal, that his attorney failed to present the documents, records and arguments necessary to his case before the Board. Such a claim is not cognizable as part of an appeal from a decision of the Board.