James LEMMON, Employee
Below, Appellant,

v.

NORTHWOOD CONSTRUCTION,
Employer Below, Appellee.

No. 510, 1995.

Supreme Court of Delaware.

Submitted: Sept. 10, 1996.
Decided: Sept. 17, 1996.
Opinion Issued: Sept. 30, 1996.*

Joseph J. Rhoades, Wilmington, for Appellant.

Robert H. Richter, Heckler & Cattie, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice.

In this appeal from the Superior Court, the appellant, James Lemmon ("Lemmon") contends that the Superior Court erred in its refusal to set aside a decision of the Industrial Accident Board ("Board") on the ground that the Board improperly considered evidence affecting his credibility. We agree and reverse.

I

The essential facts underlying the origin of Lemmon's claim for workers' compensation is not disputed. On May 13, 1989, Lemmon suffered a work related injury while employed by the employer-appellee, Northwood Construction ("Northwood"). Lemmon, a member of the Painter's Union, was injured when he was climbing on scaffolding and his knee struck a protruding pin.

As a result of the injury, Lemmon was placed on total disability from May 31, 1989 through February 25, 1991, at which time he returned to work for another employer. Due to the fact that his new employment was for a substantially lower wage, Lemmon continued to receive partial disability payments equal to those he received while on total disability.

* The September 17, 1996 Order is vacated and this Opinion is issued in lieu thereof.

In April of 1991, Lemmon's injured knee gave out when he was walking down a flight of stairs, causing him to fall and suffer a lower back injury. Lemmon claimed that his knee buckled as a direct result of his original work injury and, therefore, the lower back injury should be compensable as well. Northwood rejected this claim and in February, 1994, petitioned the Board to terminate Lemmon's partial disability benefits. For purposes of this appeal the central question posed to the Industrial Accident Board was whether claimant was entitled to continuing partial disability benefits for a lower back injury which was alleged to have resulted when his injured knee gave way, causing him to fall.

During the Board hearing held on March 17, 1994, Lemmon presented medical testimony in support of his claim. Dr. Bodenstab, a board-certified orthopedic surgeon, treated Lemmon in January 1990 after his initial knee injury and diagnosed weakness in the quadriceps accompanied by post-traumatic chondromalacia. Chondromalacia is related to quadriceps weakness and can cause lack of knee support. For this reason Lemmon was placed in a brace to prevent giveway in the knee. Even Northwood's medical expert, Dr. Case, testified that if the April 1990 fall was caused by Lemmon's knee giving out, then he would relate the lower back injury to the earlier industrial accident. Following the medical testimony, Lemmon was sworn and testified that, in April 1990 he was walking down a flight of stairs when his knee gave way causing him to fall and injure his lower back. Based on all of the testimony the Board concluded: "[i]n order to accept the relationship between the claimant's lower back impairment and the industrial accident, the claimant's history must be truthful."

At the conclusion of the hearing the Board issued a written decision in which it stated that Lemmon was not credible and the Board did not believe his knee gave way causing him to fall. The Board determined the lower back injury was not related to the earlier industrial accident and terminated Lemmon's partial disability payments.

In its decision, the Board stated that it "does not believe that claimant's leg gave way causing him to fall." Since there was no evidence to the contrary, the Board apparently based its rejection of Lemmon's testimony on some factor which it did not specify. The Board's decision refers to only two instances which could have impacted on its determination of credibility. First, the Board noted that Dr. Bodenstab detected an odor of alcohol about Lemmon during his initial medical examination. Secondly, the Board opinion, referencing Lemmon's testimony, states: "[w]hen asked why he looked as though he had been in the sun, the claimant said he had been in Florida in January. Otherwise, he could not explain why his face was flushed." No testimony was offered, nor was it alleged by Northwood, that alcohol played a role in either of Lemmon's accidents. Moreover, both the incident involving the odor of alcohol in Dr. Bodenstab's office and the "flushed" appearance, occurred either several months prior to or after the fall which caused the lower back injury.[1]

## II

Since the Board has expressly referred to evidence of Lemmon's alleged drinking habits but has provided no other finding which could be the basis for rejecting his testimony, we assume that such evidence was used to determine credibility. The Board, sitting as the trier of fact, is permitted to pass on the credibility of witnesses and to accord their testimony the appropriate weight. *Venture Milling Co. v. Bennett,* Del.Super., No. 95A–08–002, Graves, J. (Jan. 11, 1996). The Board may not, however, reject uncontradicted testimony based on innuendos of possible intoxication, when the drinking habits of the witness bear no relation to the issues at hand. *cf.* 19 *Del.C.*

1. There is no evidence in the record that Lemmon's face was "flushed" when he testified before the Board. The questioning by Northwood's attorney upon which the Board apparently relied for its "flushed face" finding was as follows:

Q. Have you been on vacation? I noticed at least your face seems red. Have you been away somewhere warm getting a suntan?
A. I went away in January.
Q. Where did you go in January?
A. St. Petersburg.

§ 2353(b) (intoxication is a defense to a workers' compensation claim if it is the cause of an injury).

■ Pursuant to 19 *Del.C.* § 2347, the Board is required to make express findings of fact, set forth its conclusions and provide reasons for drawing those conclusions. This Court's function, paralleling that of the Superior Court which sits in initial review, is to determine whether the record made before the Board provides substantial evidence to support its conclusion and is free of error of law. *Lester C. Newton Trucking Co. v. Neal,* Del.Supr., 204 A.2d 393, 394 (1964).

The Board has identified no factual dispute on the key issue of causation and thus the record lacks substantial evidentiary support for its credibility determination. If, as it appears, the Board based its credibility determination on Lemmon's alleged alcohol use it has posited its determination on an irrelevant and obviously prejudicial factor. Accordingly, its finding of a deficiency of causation lacks substantial evidentiary support and must be reversed.

The judgment of the Superior Court is REVERSED and this matter REMANDED to the Superior Court with direction to FURTHER REMAND this matter to the Industrial Accident Board for the purpose of determining Lemmon's entitlement to continued partial disability benefits. On remand the Board should state its findings of fact based on the record made before it without reference to any evidence of alcohol use by the claimant. In the event the Board makes further findings of credibility, it must identify the disputed issues of fact upon which such determination is made and give reasons for its adherence to the factual scenario it adopts.

Jurisdiction is not retained.