# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN S. MALIK, )
)
   Appellant, )
)
  v. )  C.A. No.: N16A-07-006 AML
)
THERESA DEYARMIN & )
UNEMPLOYMENT INSURANCE )
APPEAL BOARD, )
)
   Appellees. )

Submitted: March 31, 2017
Decided: June 23, 2017

## ORDER

**On appeal from the Unemployment Insurance Appeal Board:**
**REVERSED & REMANDED.**

1. This is an appeal by an employer from an Unemployment Insurance Appeal Board (the "Board") decision affirming an appeals referee's decision awarding unemployment benefits to a claimant. The Board's decision determined the claimant was terminated without just cause. The employer argues the Board failed to consider all the evidence and applied the incorrect law. For the reasons that follow, I am unable to review the decision due to the Board's inadequate factual findings, and I therefore remand the case to the Board.

2. Theresa Deyarmin worked as John S. Malik's legal secretary from January 2008 until February 2016.[1] Malik practices criminal law as a solo practitioner.[2] Deyarmin's duties included opening client files, calendaring and scheduling matters, filing and mailing documents, and answering the office telephone.[3] On or about February 29, 2016, Malik discharged Deyarmin for poor performance of job duties and misconduct, which included "insubordination[] [and] violation of company policies/procedures."[4] According to Malik, Deyarmin's behavior was a willful and wanton violation of Malik's expected standard of conduct.

3. Deyarmin's alleged misconduct involved failing to send certain discovery correspondence in criminal cases (a "Rule 16 Letter") and failing to calendar events after multiple warnings, and her poor job performance was based on her failure to maintain both a call log and the calendar.[5] Allegedly, Deyarmin's conduct subjected Malik to potential professional liability.[6]

4. Deyarmin filed for unemployment benefits effective March 5, 2016. On March 17, 2016, a claims deputy concluded Malik discharged Deyarmin "from

---

[1] R. at 15.
[2] *Id.* at 76.
[3] *Id.* at 16, 71.
[4] *Id.* at 4, 5.
[5] *Id.* at 4.
[6] *Id.* at 16.

her position due to negligence in conjunction with her work."[7] The claims deputy determined Deyarmin was discharged for just cause and she therefore was disqualified from receiving unemployment benefits.[8] Deyarmin timely appealed the claims deputy's decision.[9]

5. On April 11, 2016, an appeals referee (the "Referee") held a hearing to address whether Deyarmin was discharged for just cause.[10] At the hearing, Malik testified that Deyarmin's termination was preceded by "a series of problems that became very significant" in February 2016: failing to calendar a hearing the week of February 7, 2016; failing to send a Rule 16 Letter the week of February 14, 2016; failing to send a Rule 16 Letter the week of February 21, 2016; and failing to calendar a teleconference for February 25, 2016.[11] Malik testified that the failure to file the Rule 16 Letters not only was embarrassing professionally for him, but it exposed him to potential professional liability.[12] Malik also testified that while he was in court during a trial, he received seven phone calls in a row from the United States Attorney's Office regarding a teleconference in front of a federal district court judge.[13] The teleconference was not on Malik's calendar, and he knew nothing about it. Ms. Deyarmin testified: "I understand that I didn't file

---

[7] *Id.* at 5.
[8] *Id.*
[9] *Id.* at 8.
[10] *Id.* at 10.
[11] *Id.* at 16-24.
[12] *Id.* at 20.
[13] *Id.* at 21-23.

those documents that were supposed to be there. I sometimes could not find files because they weren't where they're supposed to be. . . ."[14]

6. On April 11, 2016, the Referee reversed the claims deputy's decision, concluding Malik was unable to establish just cause for termination and Deyarmin therefore was entitled to unemployment benefits.[15] The Referee found:

> During February 2016, Claimant's work product was not up to Employer's standards. Items were not placed on Employer's calendar and Rule 16 letters were not sent as needed. Claimant could not find the files she needed as they were not supposed to be [sic]. Within one month there were four major problems with Claimant's work. Employer then decided to discharge Claimant.

The Referee concluded that Malik "merely mentioned instances of [Deyarmin's] failure to do her job as required. However, no unequivocal warning or other documentation was presented."[16] After considering "the factual circumstances for which [Deyarmin] was discharged in light of her testimony and lack of sufficient first-hand evidence to contradict that testimony," the Referee was "unable to find

---

[14] *Id.* at 24-25. The remainder of Deyarmin's testimony: ". . . But I also was doing more than just a secretarial job. I was doing deposits for him. I was going to the Courthouse for him. No extra pay. I did work on Saturday, either in early January or early February. He got a new billing system. I worked for three hours on a Saturday, never got compensated for it. He is paying the law clerk's health insurance, which I worked for him for eight years and he told me he could never afford to pay my health insurance. I didn't think that was fair that somebody new comes in and he's paying her health insurance and he didn't pay mine." *Id.* at 25.
[15] *Id.* at 28, 30.
[16] *Id.* at 30.

willful or wanton misconduct on [Deyarmin's] part supporting her discharge for just cause."[17] Malik timely appealed the Referee's decision to the Board.[18]

7. On May 11, 2016, the Board held a hearing.[19] The Board considered the evidence previously presented to the Referee and the Referee's decision and heard testimony from both parties.[20] Malik submitted 14 exhibits, without objection.[21] First, Malik testified that part of Deyarmin's job duties included maintaining a running-list of daily, detailed phone messages, which he first instructed her to do on May 12, 2010.[22] Malik also testified that he instructed Deyarmin to email this list to him and place it in a three-ring binder at the end of each day.[23] Malik submitted the May 12, 2010 email in which he explained this call log policy to Deyarmin.[24] Malik further testified that in January 2016, he reviewed the policy with Deyarmin.[25] Malik submitted four emails, ranging from January 2016 to February 2016, in which he told Deyarmin she incorrectly was

[17] *Id.*
[18] *Id.* at 33.
[19] *Id.* at 87.
[20] *Id.*
[21] *Id.* at 70-71. These exhibits were submitted to the claims deputy but not to the Referee as an oversight on Malik's part. Despite being told that the Referee hearing was *de novo*, Malik believed the exhibits would be included in the claims deputy's file that the Referee received. *Id.* at 70; *see also id.* at 14 ("This is a hearing *de novo*, a brand new hearing. I will make my determination on what I hear and see during today's hearing.").
[22] *Id.* at 71.
[23] *Id.*
[24] *Id.*; *see* R. at 34 (Ex. 1).
[25] R. at 72-73.

maintaining the call log or otherwise incorrectly was logging incoming phone calls.[26]

8.    Malik also testified that in 2013, he instructed Deyarmin that before she scheduled any existing clients to come into the office, she needed to clear it with him.[27]  Malik submitted two emails: one dated May 7, 2013, reminding Deyarmin of this policy,[28] and a second dated February 27, 2014, instructing Deyarmin to stop scheduling client meetings without first clearing it with him.[29]

9.    Malik further testified that he is required, for newly opened criminal cases, to send Rule 16 Letters requesting discovery from the State.[30]  Malik testified Deyarmin was instructed that upon opening a new client file, she was to send a Rule 16 Letter and calendar all court dates.[31]  Malik testified that he would explain to Deyarmin from time to time the importance of sending the Rule 16 Letters because he would notice the letter was not sent in a particular case.  He then would ask Deyarmin to go through the entire file cabinet and make sure Rule 16 Letters were in every file.  Malik also testified he held a meeting at the beginning of 2016 stressing the importance of sending out the Rule 16 Letters.[32]

---

[26] Three of the four emails are dated within six days of each other and are individual emails regarding individual phone messages. *See id.* at 35-43 (Exs. 2-5).
[27] R. at 74.
[28] *Id.* at 45 (Ex. 6).
[29] R. at 75; R. at 47 (Ex. 7).
[30] R. at 75.
[31] *Id.* at 76.
[32] *Id.*

10. Malik lastly testified that while he was in trial on February 24, 2016, his phone kept ringing.[33] He asked the judge to be excused so he could take the call because he could see the United States Attorney's Office was calling. Malik testified that the United States Attorney for the District of Delaware was calling for a teleconference in front of a federal district judge – a judge with whom Malik previously missed an office conference due to failing to calendar the event. Luckily, the teleconference was not until February 25, 2016. That teleconference, however, was not on Malik's calendar either. Malik testified that Deyarmin's failure to put this teleconference on the calendar was "the last straw."[34]

11. Deyarmin testified that she "did make mistakes" and "did not file those [Rule 16 letters], but there were times you could not find the files in that office" because they would be in Malik's car or briefcase.[35] She also stated she does not know what was wrong with the calendar because the teleconference was on her calendar. Deyarmin testified she was aware that she needed to file the Rule 16 Letters and Malik explained to her that her continued failures to follow his instructions would result in her termination.[36]

12. On June 22, 2016, the Board issued its decision, affirming the Referee's decision. The Board found that Malik's warning to Deyarmin on

[33] *Id.* at 81.
[34] *Id.*
[35] *Id.* at 84.
[36] *Id.* at 85.

February 23, 2016 related to the Rule 16 Letters, but he terminated her for failing to calendar a teleconference. The Board therefore concluded Malik terminated Deyarmin for poor performance. Relying on *Starkey v. Unemployment Insurance Appeal Board*, the Board determined Malik failed to prove Deyarmin was terminated for just cause, since "poor performance of duties 'due to mere inefficiency, unsatisfactory conduct, or failure of performance as a result of inability or incapacity, inadvertence in isolated instances or good faith errors of judgment' does not rise to the level of willful and wanton."[37] Malik timely appealed the Board's decision to this Court.

13. Malik argues the Board's decision was neither supported by substantial evidence nor free from legal error. Malik contends the Board failed to consider or address his evidence of Deyarmin's continued misconduct between October 2015 and February 2016.[38] According to Malik, the Board "defied this Court's well-established standard that 'just cause' for termination exists when an employee was aware of an employer's established policy and disciplined for subsequent violations."[39] Malik also argues the Board failed to address whether Deyarmin's misconduct rose to a level of willful and wanton.[40] As a result of these oversights, Malik contends, the Board assumed Deyarmin was terminated for an

[37] *Id.* at 89 (quoting *Starkey v. Unemployment Ins. Appeal Bd.*, A.2d 165, 166-67 (Del. Super. 1975)).
[38] Appellant's Opening Br. 7-8.
[39] *Id.* at 8.
[40] *Id.*

8

isolated instance of poor performance or good faith error in judgment, and incorrectly relied on *Starkey*. Finally, Malik contends the Board's decision is at odds with *Green-Hayes v. Delaware Department of Labor*,[41] which holds an employee's action that subjected an employer to potential litigation is willful and wanton.[42] Malik further argues that such cases are so egregious, termination is warranted without notice.[43]

14.    The Board did not file an answering brief, asserting that the "underlying case was decided on the merits" and Malik "raises only challenges to the Board's decision on the merits."[44] Deyarmin did not timely file any opposition to the appeal. On February 20, 2017, Malik filed a reply brief, arguing this Court should deem his opening brief unopposed and the Board's decision should be reversed solely on that basis.[45]

15.    After the record closed,[46] Deyarmin filed a letter in which she: (i) acknowledged not sending the Rule 16 Letters in two cases but offered reasons for not doing so; (ii) asserted it was not her job to ensure that Malik's phone calendar reflected the same information as was on the computer calendar; and (iii) stated if

---

[41] 2012 WL 3518122 (Del. Super. Aug. 8, 2012).
[42] *Id.*
[43] *Id.* (citing *Green-Hayes*, 2012 WL 3518122).
[44] D.I. 15.
[45] Appellant's Reply Br. 1 (citing *Green v. Unemployment Ins. Appeal Bd.*, 2012 WL 5462848 (Del. Super. Sept. 28, 2012)).
[46] *See* D.I. 20. Deyarmin failed to respond to this Court's March 8, 2017 delinquent brief notice, D.I. 19, and therefore the Court issued an Order stating "the Court will make a determination of the issue on the papers which have been filed."

Malik had returned client phone calls, people would not show up at his office.[47]

Deyarmin also claimed she deserves unemployment benefits for "being a hard worker for eight years with one raise the entire time."[48]

16.    This Court's review of the Board's decision is limited to whether the Board's findings were supported by substantial evidence and whether its decision was free from legal error.[49] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50] The Court will not weigh evidence, determine questions of credibility, or make its own factual findings and conclusions.[51]

17.    The Court is unable to review the Board's decision due to its inadequate factual findings based on the evidence. "Without the Board's factual findings, the Court cannot determine whether there was substantial evidence to support the Board's decision or whether the law was properly applied to the facts."[52] Although the Board enjoys great autonomy in its fact-finder role, "the

---

[47] D.I. 21.
[48] *Id.*
[49] *See Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781-82 (Del. 2011); *Deysher v. Unemployment Ins. Appeal Bd.*, 2011 WL 7063475, at *1 (Del. Super. Sept. 28, 2011) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)) (defining substantial evidence as "evidence from which the Board could fairly and reasonably reach its conclusion").
[50] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 893, 899 (Del. 1994) (citing *Olney*, 425 A.2d at 614).
[51] *Thompson*, 25 A.3d at 782.
[52] *R.C. Nehi Corp. v. Dillmore*, 1986 WL 4570, at *3 (Del. Super. Mar. 31, 1986) (citing *Barnes v. Panaro*, 238 A.2d 609 (Del. 1968); *Farley v. Sears, Roebuck & Co.*, 258 A.2d 293 (Del. Super. Oct. 1, 1969)); *Atlantis Commc'ns v. Webb*, 2004 WL 1284213, at *2 (Del. Super. May 28, 2004) ("The Board's decision should provide the reviewing court with the Board's holding

Board may not completely ignore evidence that contradicts the Board's findings."[53]

At the Board's hearing, Malik presented evidence that from October 2015 to February 2016, Deyarmin persistently had performance issues. Yet, the only mention the Board made of this evidence was a fleeting reference to it in its "Summary of Evidence." The Board's "Summary of the Evidence" states:

> Malik explained the 14 exhibits presented by his counsel. He testified that Exhibits 1-5 pertain to Claimant's failure to keep a phone log. The Claimant was instructed not to schedule current client meetings until it was cleared with him. He testified that Exhibits 6-7 address Claimant's failure to schedule current client meetings properly. He testified that Exhibits 8-11 pertain to Claimant's failure to send Rule 16 discovery letters. The final incident was February 23, 2016 when Claimant failed to send out a Rule 16 Discovery letter. He sent an email to the Claimant (Exhibit 11). He considered this as the final warning. On February 24th, he found out that a [f]ederal teleconference had not been calendared. Claimant was terminated for poor performance.
>
> Claimant . . . testified that she does admit that she did make a mistake. Claimant was aware of the need to file Rule 16 letters.[54]

---

and reasoning.") (citing *Turbitt v. Blue Hen Lines*, 711 A.2d 1214, 1216 (Del. 1998) (citing *Lemmon v. Northwood Constr.*, 690 A.2d 912, 913-14 (Del. 1996) ("Rejection of evidence on the basis of credibility must be supported by specific references to the evidence of record which prompts disbelief.")); *New Colony N. Apartments Co. v. Vaught*, 1995 WL 109050, at *2 (Del. Super. Feb. 28, 1995) (citing *R.C. Nehi Corp.*, 1986 WL 4570, at *3) ("Without the Board's factual findings, the Court cannot determine whether there was substantial evidence to support the Board's decision or whether the law was properly applied to the facts."))).
[53] *Haggerty v. Bd. of Pension Trs.*, 2012 WL 3029580, at *4 (Del. Super. July 20, 2012) (citations omitted).
[54] R. at 87-88.

The "Findings of Fact and Conclusions of Law" section acknowledges even less evidence, containing only the following facts:

> Claimant worked fulltime as a legal secretary from January 2008 through February 29, 2016. . . . The Board finds that Claimant was warned on February 23, 2016. That warning states, in pertinent part: . . . However, the very next day, Claimant was terminated for failing to calendar a [f]ederal teleconference. Mr. Malik testified that Claimant was terminated for poor performance. . . . Further, the evidence submitted to the Board by the Employer shows that Employer tolerated Claimant's behavior for years.[55]

18. There are many facts on which the Board depended for its ruling that are not recited in its findings of fact. The Board also failed to provide any indication that it actually considered certain material allegations. For instance, as to the evidence of Deyarmin's previous misconduct relating to the phone log, calendar, and the Rule 16 Letters, the Court does not know if the Board overlooked this evidence, disbelieved it, or found it immaterial, even if true.[56] Critically, there also is no mention of Malik's allegation that Deyarmin's conduct potentially exposed him to professional liability. Furthermore, nowhere does the Board acknowledge Deyarmin's testimony that Malik explained to her that continued

---

[55] *Id.* at 88-89.

[56] The Board is not required to comment on every piece of evidence or every allegation made. *Wesley Coll. v. Unemployment Ins. Appeal Bd.*, 2009 WL 5191831, at *9 (Del. Super. Dec. 31, 2009) ("While the Board need not comment on every piece of evidence, it must not 'fail to address material allegations.'") (citing *R.C. Nehi Corp.*, 1986 WL 4570, at *3 (citation omitted) ("The Board need not comment on every fact situation or mention testimony to which it does not assign credibility.") (quoting *Atlantis Commc'ns*, 2004 WL 1284213, at *2)). The Board, however, must resolve material allegations. *Wesley Coll.*, 2009 WL 5191831, at *9.

failures to follow his instructions would result in her termination.[57]   Whether Deyarmin received a warning seemingly affected the Board's decision, and therefore the Board must explain why Deyarmin's testimony on this issue was irrelevant.   The Court does not know if or how this misconduct and warning, or lack of warning, affected the Board's decision.[58]

19.    The Board's discussion of other issues similarly is incomplete.   For example, as to the Board's finding that Malik tolerated Deyarmin's behavior for years, the specific behavior to which the Board is referring is unclear.   In addition, the Board's "Summary of the Evidence" misstates Deyarmin's testimony in stating "she does admit that she did make a mistake."   Deyarmin testified: "I did make mistakes."[59]   There also is no explanation as to how, on one hand, the Board found that the February 23, 2016 Rule 16 Letter incident was the "final incident," but on the other hand, "Claimant was terminated for failing to calendar a [f]ederal teleconference."[60]   Most notably, the Board's ultimate finding was that Malik failed to present sufficient evidence of Deyarmin's misconduct.   Does this mean the Board accepted as true Malik's evidence but concluded that the acts

---

[57] R. at 85.
[58] *R.C. Nehi Corp.*, 1986 WL 4570, at *3; *see also Vaught*, 1995 WL 109050, at *3 ("On the other hand, if [the claimant's] employment history features misconduct including insubordination, . . . as alleged, that must be considered in weighing the incidents precipitating [his] termination.").
[59] R. at 84 (emphasis added).
[60] Malik testified that the teleconference incident "was the last straw." R. at 81.

complained of were not sufficiently willful or wanton?[61] Was Malik's evidence irrelevant or incompetent? Even if the Court assumes the Board accepted all Deyarmin's testimony, what of Malik's allegations that Deyarmin did not rebut? If the Board believed Malik's undisputed testimony, the Board did not explain why Deyarmin's behavior did not constitute just cause for termination. The Court is concerned that the Board recognized Deyarmin's ongoing inadequate job performance, yet failed to explain why it was not cause for termination.[62]

20. On the present record, the Court cannot determine if the Board's decision was supported by substantial evidence or whether the law properly was applied to the facts. Accordingly, the matter must be remanded for further proceedings consistent with this Order. Malik also argued the Board misapplied the law. Having determined that the Board's decision was not supported by substantial evidence, I need not reach that issue. Malik, however, may raise the issue to the Board on remand.

---

[61] Is the Court to infer that because the Board found Deyarmin was discharged without just cause that this issue was resolved in her favor? If there was only one issue on which evidence was offered, the inference in favor of Deyarmin would follow directly. *See Bd. of Pub. Educ. v. Rimlinger*, 232 A.2d 98, 101 (Del. 1967) ("There are occasions when the Court can readily infer from the ultimate findings and the record just what the subordinate findings must have been."). Here, however, there were a number of issues, a good number of which were not mentioned at all in the summary of evidence or findings of fact.

[62] Instead of being insignificant, the final failure to calendar incident, coming after the Rule 16 Letter incidents, may have been the straw that broke the camel's back. *See Vaught*, 1995 WL 109050, at *3; *Atlantis Commc'ns*, 2004 WL 1284213, at *3 ("[T]he court is concerned that the Board recognized Claimant's chronic absenteeism and inadequate job performance, yet failed to explain why that was not cause for dismissal.").

**FOR THE FOREGOING REASONS**, the Unemployment Insurance Appeal Board's June 22, 2016 decision is **REVERSED & REMANDED**.

**IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Carla A.K. Jarosz, Deputy Attorney General
       Michele D. Allen, Esquire
       Victoria W. Counihan, Esquire
       Ms. Theresa Deyarmin, *pro se* (via U.S. First Class Mail)