# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MATTHEW HOSKINS, | ) | |
| | ) | |
| Claimant Below-<br>Appellant and Cross Appellee, | )<br>) | |
| | ) | |
| v. | ) | C.A. No. N23A-06-004 CEB |
| | ) | |
| AMAZON.COM, | ) | |
| | ) | |
| Employer Below-<br>Appellee and Cross Appellant. | )<br>) | |

Submitted:  May 14, 2024
Decided: July 23, 2024

## MEMORANDUM OPINION

*Upon Consideration of the Appeal from the Decision of the*
*Industrial Accident Board,*
**AFFIRMED.**

Walter F. Schmittinger, Esquire, SCHMITTINGER & RODRIGUEZ, P.A., Dover, Delaware. *Attorney for Claimant Below- Appellant and Cross Appellee.*

John J. Ellis, Esquire, HECKLER & FRABIZZIO, P.A., Wilmington, Delaware. *Attorney for Employer Below- Appellee and Cross-Appellant.*

**BUTLER, R.J.**

**Background**

This matter is an appeal and cross appeal from decisions of the Delaware Industrial Accident Board ("IAB" or "Board") concerning a claim made by Claimant, Matthew Hoskins ("Claimant") and his then employer, Appellee Amazon.com ("Employer").

Claimant was working as a "picker" at an Amazon fulfillment center in Middletown, Delaware. In August, 2021, while so engaged, he was bending over a bottom bin when a coworker reached up behind him to retrieve items from the top of the bin, dislodging some merchandise boxes that then fell and hit Claimant on his back. He reported the injury but continued to work for Amazon for another 5 months or so, eventually quitting on account of his continuing complaints about his back pain.

After the August injury, Claimant saw Doctor Balu for treatment of his back pain. Dr. Balu took a medical history from Claimant and reviewed a recent MRI, noting "lumbar lordosis and bulging discs at the L5-S1 level" as well as a herniated disc at the L4-5 level. Claimant was treated with injections and put on work restrictions.

In the face of continued complaints of pain, Dr. Balu gave Claimant anti-inflammatory drugs, muscle relaxers and further injections.

Claimant also consulted a neurosurgeon, Dr. Pulak Ray, who proposed lumbar surgery "due to severe degenerative disc disease at L4-5 causing foraminal stenosis."

The cost of the surgery is what provoked Claimant to petition the IAB for "Additional Compensation Due." Claimant had already been receiving full disability benefits since leaving Amazon. He now sought an Order from the IAB that the Employer would be responsible for the surgery bills from Dr. Ray.

Thus, the critical issue, as discussed by the IAB in its Opinion denying compensation, was whether the need for surgery was causally related to the incident in August 2021, when the boxes fell on the Appellant.

## Procedural History – Issues in Dispute

While the Court appreciates that the causal relationship between the workplace incident and the need for surgery on Claimant's spine is the central issue on appeal, the pleadings have become further complicated by collateral issues that are either waived or moot. The following is offered by way of explanation.

When Claimant filed his claim for Additional Compensation Due, the Employer countered with a "Petition for Review," a request to terminate Claimant's total disability benefits on the ground that he was physically able to return to work. Employer had two witnesses to support this claim, a medical expert, Doctor Close,

and a vocational expert, Truman Perry, to present a "labor market survey" of jobs available in the area.

For reasons not relevant to this appeal, the IAB barred Dr. Close's testimony. Despite the Employer's motion to reargue and/or to continue the proceedings, the Board's ruling kept him out of the hearing. Without its medical expert, the Employer presented the labor market expert anyway, apparently believing the testimony would support its request to terminate Claimant's total disability benefits.

Ultimately, the Board did not accept Employer's argument that Claimant was not totally disabled. This rendered the labor market survey of no value to the Employer and a non-issue in this dispute.

The Employer filed a cross appeal on the denial of its Petition for Review. It identified the Board's refusal to allow the testimony of its medical expert Dr. Close as its grounds for this appeal. The Employer did not, however, address this issue in its Answering Brief or otherwise. That issue is therefore waived and will not be considered further.

As to the vocational expert who did testify, the Claimant protested the admissibility of this testimony in its Opening Brief, even though Claimant did not identify that issue in its Notice of Appeal.[1] The Court has enough to do without

---

[1] *See* Notice of Appeal, Trans. ID 70167531 (June 8, 2023).

rendering advisory opinions. The vocational expert was a non-factor in the Board's decision.

Moreover, Superior Court Rule 72 requires that "In all appeals from the Industrial Accident Board, where the claimant accepts part of the award while appealing the remainder of the award, the notice of appeal must specify that portion of the award accepted."[2] Claimant's Notice of Appeal not only failed to identify the admissibility of the vocational expert's testimony, it affirmatively represented that the appeal was "limited to the Board's denial of Claimant's petition for surgical authorization" and it was "*not* appealing the denial of the Employer's Petition for Review."[3] Thus, the argument raised in Claimant's Opening Brief concerning the admissibility of the vocational expert is not preserved for review.

Finally, Claimant's Reply Brief raises, for the first time, an argument seeking affirmation of the Board's refusal to permit the testimony of Employer's expert, Dr. Close. The problem here is that the Employer did not raise this issue in its briefing at all, apparently choosing to abandon the question before briefing. The question is not properly raised or preserved. The Court will not consider an issue raised for the first time in a reply brief.[4]

---

[2] Super. Ct. Civ. R. 72(c).
[3] *See* Notice of Appeal.
[4] *See e.g., Paikin v. Vigilant Ins. Co.,* 2013 WL 5488454 at *3 n. 12 (relying on *Mateson Chem. Corp. v. Barton*, 2008 WL 142510, at *1 n.5 (Del. Super. Jan. 15, 2008)).

With all of that said, we will now move on to the single issue that is properly preserved for review.

## I. The Board's Ruling Was Supported by Substantial Evidence

### a. Causation is a question of fact.

Is the causal relationship between the Appellant's need for back surgery and his workplace incident a question of fact or a question of law? The case law and the Restatement are virtually unanimous that causation is a question of fact.[5] Thus, the Board's conclusion that Appellant's need for surgery was not caused by his workplace injury may not be second guessed by this Court.

Perhaps understanding that this is a problem for Claimant, he says instead that "whether the Board committed legal error and the opinions of the Claimants treating doctors should have been rejected is a question of law and is reviewed de novo"[6] citing *Duvall v. Charles Connell Roofing*.[7]

But that is not what *Duvall v. Charles Connell Roofing* says. Rather, in *Duvall*, the Supreme Court reversed precedent concerning the "unusual exertion" rule to the availability of worker's compensation when injuries occur on a worksite.[8]

---

[5] *See* Restatement (Second) of Torts § 434(2); *Duphily v. Delaware Elec. Co-op, Inc.*, 662 A.2d 821, 830 (Del. 1995) ("This Court has consistently held that the issue of proximate cause is ordinarily a question of fact to be determined by the trier of fact.").
[6] Appellant's Opening Br. at 10, Trans. ID 71882826 (Jan. 26, 2024).
[7] 564 A.2d 1132 (Del. 1989).
[8] *See id.*

This change was a change of law, not one of fact.[9]  Indeed, Appellant's argument asks the Court to revisit the Board's credibility determination that the surgery was not causally related to the workplace injury and find instead that it was.  This is not something the Court is going to do.

## II.     The Claimant's Credibility was Properly at Issue.

### a.  Claimant misrepresented his medical history to his doctors.

Certainly, there are diagnostic images that support the fact that the Appellant suffered from bulging discs and the like.  The doctors saw them and testified that these physical images depict the pain that the Claimant was suffering from.  But it is naïve to suggest that the images themselves tell the whole story.  Pain is reported by the claimant to the doctor, who then goes searching for its source.  But the search begins with the report of the claimant, making the claimant's credibility a crucial ingredient in the diagnostic and treatment process.

The Claimant repeatedly reported to his doctors that he had no prior back problems, and that all of his pain stemmed from the boxes that fell on him at Amazon

---

[9] The Court in *Duvall* held that "[w]e believe that abandoning the unusual exertion rule and its patent inequities is consistent with the statutory principle that compensation be paid 'for personal injury or death by accident arising out of and in the course of employment.' [and that] [i]n the absence of contrary legislation, therefore, we adopt the 'usual exertion' rule. Under this principle, an injury is compensable if the ordinary stress and strain of employment is a substantial cause of the injury." *Id.* at 1133.

in August, 2021. The medical testimony was predicated on their assumption that Claimant had not previously sought treatment for back pain.

But the evidence showed that Claimant had been to Bayhealth Medical Center in 2014 with complaints of lumbar pain and a diagnosis of mild degenerative changes. He had a lumbar MRI done. And in 2020, before he started working for Amazon, he went to the emergency room at Bayhealth, complaining of chronic back pain. X-rays taken then indicated "back pain at the L4-5 level occurring over six weeks." And on a second visit to Bayhealth in 2020, he reported that he "slipped on the floor and landed on his low back."

Thus, three hospital visits, an MRI on his back and X-rays diagnosing pain in the L4-5 level – the very same location Dr. Ray proposed for surgery – somehow slipped from Claimant's memory when reporting his medical history to his doctors. It is hardly shocking that the Board, in weighing credibility, concluded that "Claimant's failure to report his prior low back complaints as to his lumbar history, which was extensive and dated back to 2014, when seeking treatment with Dr. Balu and Dr. Ray, was crucial to its determination that the lumbar surgery which he now seeks is not reasonable, necessary, and causally related to the August 2021 work accident."[10]

---

[10] Board Op. at 14, Trans. ID 70167531 (June 8, 2023).

As the Board properly noted in its Opinion, "[w]hether medical services are necessary and reasonable or whether the expenses are incurred to treat a condition causally related to an industrial accident are purely factual issues within the purview of the Board."[11]

### b. Claimant's illicit drug use was not outcome determinative, but certainly did not help his credibility.

Claimant also complains that the Board should not have considered the fact that he misrepresented his illicit drug use to Dr. Balu. The doctor prescribed opiates, among other modalities, to treat Claimant's pain, yet his screenings showed no consumption of opiates, but positive consumption of cocaine. Claimant finally told Dr. Balu that he was trying to quit using cocaine, but only after being confronted.

Dr. Balu testified that denial of illicit drug use was not unusual in his practice. Nonetheless, the Board said, his denial "does not support Claimant's overall credibility."[12]

Claimant refers the Court to the decision of *Lemmon v. Northwood Construction*[13] for the proposition that the Board may not make compensation decisions based upon his possible substance abuse after the fact. *Lemmon* involved

---

[11] Board Op. at 13 (*citing Bullock v. K-Mart Corp.,* 1995 WL 339025 at *3 (Del. Super. May 5, 1995); *Keil's Wholesale Tire v. Marion*, 1986 WL 18001 (Del. Oct. 27, 1986)).
[12] Board Op. at 15.
[13] 690 A.2d 912 (Del. 1996).

a painter who injured his knee in a workplace accident and then fell down some stairs, allegedly because his knee "gave out," injuring his back. The Board did not believe he fell down the stairs because of his injured knee and denied further compensation, but pointed only to the fact that he had alcohol on his breath during a doctor's visit in support of that conclusion. The Supreme Court ruled that alcohol on one's breath, months later, was not substantial evidence supporting the Board's conclusion that his knee had not given out, causing the fall.

Claimant complains that there was no evidence that his cocaine use had any part of his workplace injury or on the opinions of his medical expert, Dr. Balu. That is true. But Claimant's credibility in claiming to have forgotten that he had visited the hospital on several occasions for back pain certainly was at issue. His truthfulness in failing to report his medical history of disease to L4-L5 of his lumbar spine was at issue. Had the Board relied exclusively on his drug abuse to deny him benefits, this would be a different case.

But that was hardly the only problem with Claimant's credibility. Rather, it was but one factor cited by the Board as a basis for questioning his veracity. In *Lemmon*, it was unclear whether the claimant fell on the stairs because people fall on stairs sometimes or because his injured knee caused the fall. Here, Employer agrees Claimant suffered a workplace injury to his back and the issue was whether the planned surgery was necessitated by the workplace injury or another cause – one

that he failed to report to his medical experts. It was not improper for the Board to consider Claimant's candor in assessing his credibility and his lack of candor concerning his drug use was an appropriate factor considering his lack of candor concerning his medical history.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the decision of the UIAB must be **AFFIRMED**. Since no issue was raised by Employer's cross-appeal that is preserved for review, that appeal is **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

/s/ Charles. E. Butler
Charles E. Butler, Resident Judge