# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

COREY FERRELL,                          )
                                        )
    Claimant-Below,                     )
    Appellant,                          )
                                        )
v.                                      )    C.A. No. N24A-08-004 CEB
                                        )
CITY OF WILMINGTON,                     )
                                        )
    Employer-Below,                     )
    Appellee.                           )

Submitted: December 16, 2024
Decided: March 10, 2025

**MEMORANDUM OPINION**

*Upon Appellant's Appeal*
**AFFIRMED.**

James Gaspero, Esquire, Nitsche & Fredricks, LLC, Wilmington, Delaware. Attorney for Appellant.

Gregory P. Skolnik, Esquire, Heckler & Frabizzo, Wilmington, Delaware. Attorney for Appellee.

**BUTLER, R. J.**

**INTRODUCTION**

The following is the Court's ruling on an appeal filed by Corey Ferrell ("Claimant") in a dispute before the Delaware Industrial Accident Board ("the Board") involving his work as a Wilmington firefighter. For the reasons that follow, the decision of the Board will be affirmed.

**FACTS**

**1. 2015 accident and treatment**

In 2015, Claimant was working as a firefighter for the Belvedere Fire Company when he was involved in a work-related motor vehicle accident. He suffered a back injury and was treated by doctors. He had an MRI , which reflected several bulges and hernias in his thoracic and cervical spine. He made a claim for worker's compensation. After undergoing various treatments, in 2016, Dr. Bandera assessed a 10% permanency due to his spinal injuries.[1]

In 2018, Claimant and the worker's compensation insurer agreed to a "commutation" of his claim – the worker's compensation equivalent to a settlement and release.[2] That commutation included an agreement that Claimant was waiving

---

[1] D.I. 1 Ex. A. Induct. Accident Bd.'s Decision on Pet. to Determine Compensation Due at 8 (May 6, 2024), Trans. ID 74127816 [hereinafter IAB's Decision].

[2] D.I. 16 Appellee's Answering Br. on Appeal at 9 (Dec. 9, 2024), Trans. ID 75172425 [hereinafter Appellee's Answering Br.].

all claims for any future benefits from the insurer arising from the injuries he received in 2015.[3]

### 2. October 6, 2023: an "untoward incident"

On October 6, 2023, Claimant was now working as a firefighter for the City of Wilmington Fire Company. He and his crew responded to a call for service and was required to climb a staircase. He was also laden with his own equipment as well as two additional "high rise packs" that weigh about 30-40 pounds each.[4] While climbing the stairs, Claimant became short of breath, experienced chest pains, and there was concern that he was having a cardiac event. Back at the station, he felt pain in his back and had "spasms."[5] EMTs came and brought him to the hospital for testing.

Luckily, it was not a cardiac event and Claimant was released to see his family doctor to follow up. He continued to experience pain in his back. His family physician ordered an MRI of his spine, medication, and chiropractic therapy. The doctor eventually cleared him to return to work in March, 2024.[6]

---

[3] *Id.*

[4] D.I. 15 Appellant's Opening Br. on Appeal at 4 (Nov. 18, 2024), Trans. ID 75032982 [hereinafter Appellant's Opening Br.].

[5] *Id.* at 4.

[6] *Id.* at 6.

Claimant filed a Petition under the Worker's Compensation Act. The employer hired an expert witness, voluminous medical records were secured, and the matter was heard by the Board.

After hearing the testimony of the Claimant, his family physician and the employer's medical expert witness, the Board ruled that the Claimant had failed to sustain his burden of proving that the October 6, 2023 incident caused a new injury for which compensation was due.[7] Rather, the Board ruled that the condition he experienced in October 2023 was a recurrence of the spinal injury he suffered in the 2015 automobile accident.[8] The Board ruled that the 2023 incident was insufficient to break the chain of causation from the prior incident so as to impose liability on the second (current) employer.[9]

## STANDARD OF REVIEW

On an appeal from the Board, the court determines 1) whether the Board's conclusions are supported by substantial evidence; and 2) whether the Board' conclusions are free from legal error.[10] Substantial evidence means "relevant

---

[7] IAB's Decision. at 17.

[8] *Id.* at 17-18.

[9] *Id.*

[10] *Stevens v. State*, 802 A.2d 939, 944 (Del. Super. 2002) (citing *General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del.1960)).

4

evidence as a reasonable mind might accept as adequate to support a conclusion."[11] But the court does "not weigh evidence, determine questions of credibility, or make its own factual findings."[12] The court reviews questions of law *de novo*.[13]

## ANALYSIS

### 1. "Aggravation" and "Recurrence"

The casual reader would do well to understand at the outset that the lexicon of worker's compensation cases makes a critical distinction between "aggravation" of a preexisting condition and "recurrence" of a preexisting condition. Aggravation connotes a change in the mechanics of the condition such that we arrive at a different condition than before.[14] The condition itself must change, not simply its perception as reported by the claimant.[15]

---

[11] *Scheers v. Inder. Newspaper*, 2003 WL 1888842, at *1 (Del. Super. Mar. 31, 2003), *aff'd in part, remanded in part sub nom. Scheers v. Indes. Newspapers*, 832 A.2d 1244 (Del. 2003) (quoting *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del.1994)).

[12] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[13] *Bayada Home Healthcare v. Shaw-Hicks*, 2024 WL 5200101, at *2 (Del. Super. Dec. 23, 2024) (citing *Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 652 (Del. 2006)).

[14] *Parson v. City of Wilmington*, 2013 WL 297960, at *1 (Del. Super. Jan. 24, 2013) (quoting Webster's Ninth New Collegiate Dictionary, 64 (1990)) (noted that aggravation "means that a condition is 'made worse, more serious, or more severe.'").

[15] *Turulski Custom Woodworking v. Sun Dog Cabinetry*, 2004 WL 1172884, at *6 (Del. Super. May 11, 2004) (citing *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 645 (Del.1993).

When a preexisting condition is aggravated as a result of a workplace event, it is considered a compensable accident.[16] On the other hand, if the previous condition has not changed as a result of a workplace incident, but the claimant's perception of it has – usually by experiencing pain at its locus – it is not an "accident" under the statute such that compensation is available.[17] So to qualify as an accident, the "untoward workplace event" must cause a change in the physical condition of the claimant.[18]

Claimant here explained in his testimony that he was carrying multiple high-rise bags up the stairs and experienced chest pains.[19] Later, he experienced back pains, emanating from the same locus as the site of his previous workplace injury in 2015. Were these back pains an "aggravation" of his previous condition for which he is entitled to compensation? Or were they simply a "recurrence" of the back pain stemming from the injury he suffered in the workplace incident in 2015? Needless to say, resolution of this tricky question requires consideration of the medical history of the 2015 injury and treatment as well as consideration of the divergent expert

---

[16] *State v. Neff*, 2003 WL 22064099, at *3 (Del. Super. Sept. 3, 2003), *aff'd*, 842 A.2d 1244 (Del. 2004).

[17] *Steen v. State*, 1997 WL 33442119, at *4 (Del. Super. Apr. 22, 1997).

[18] *Barkley v. Johnson Controls*, 2003 WL 187278, at *2 (Del. Super. Jan. 27, 2003).

[19] IAB's Decision at 3.

opinions of his MRIs in 2023 after his more recent episode.

## 2. The Board applied the proper legal standard

On appeal, Claimant contends that the Board erred by applying the aggravation/recurrence framework in *Standard Distribution Co. v. Nally*.[20] Claimant instead argues that the Board should have applied the "usual exertion" standard of *Duvall v. Charles Connell Roofing*.[21]

In *Duvall*, a roofer who was born with spondylolisthesis – a condition that creates a predisposition for lower-back problems – regularly lifted 80-pound bundles of roofing materials off a mechanized ladder for his work.[22] All of that lifting eventually resulted in the roofer developing acute lumbar strain and orders to get out of the roofing business.[23] The roofer petitioned for compensation from the Board, but the Board denied the claim[24] because at the time Delaware law only allowed workers compensation for injuries that occurred as a result of "unusual exertion," regardless of the claimant's preexisting conditions.[25]

---

[20] Appellant's Opening Br. at 11; *see also Standard Distrib. Co. Through Pennsylvania Mfrs. Ass'n Ins. Co. v. Nally*, 630 A.2d 640, 645 (Del. 1993).

[21] Appellant's Opening Br. at 11-12; *see also Duvall v. Charles Connell Roofing*, 564 A.2d 1132, 1133 (Del. 1989).

[22] *Duvall*, 564 A.2d at 1133.

[23] *Id.*

[24] *Id.*

[25] *General Motors Corporation v. Veasey*, 371 A.2d 1074, 1074-76 (Del. 1977).

On appeal, the Delaware Supreme Court in *Duvall* abrogated the "unusual exertion" rule and held that a claimant with a preexisting condition could recover for "usual exertion" on the job.[26] To be clear, the *Duvall* "usual exertion" rule is limited to those cases where the claimant alleges that entitlement to compensation is predicated on the aggravation of a preexisting condition that is *not* tied to an identifiable industrial accident.[27] On the other hand, if "there is an identifiable industrial accident, the compensability of any resultant injury must be determined exclusively by an application of the 'but for' standard of proximate cause."[28] Claimant here did not allege that he was engaged in his routine occupational duties. Rather, he pegged his claim to a specific, identified incident in which he was carrying multiple high-rise packs up some stairs. And Duvall's injury was unquestionably a different injury from his genetic condition. The issue of recurrence/aggravation was not even considered in *Duvall*. *Duvall* is therefore an inappropriate tool for analyzing the issue here.

---

[26] *Duvall*, 564 A.2d at 1136.

[27] *State v. Steen*, 719 A.2d 930, 932 (Del. 1998) (citing *Duvall*, 564 A.2d at 1136).

[28] *Hoffecker v. Lexus of Wilmington*, 36 A.3d 349, 349 (Del. 2012) (citing *Sheen*, 719 A.2d at 932; *Duvall*, 564 A.2d at 1136).

8

### 3. The Board's reliance on *Nally*

In its decision below, the Board used the principles set forth by the Supreme Court in a decision rendered several years after the *Duvall* case: *Nally.*[29]

Nally worked for Standard Distributing on a beer truck, making deliveries. He injured his "lower back and right thigh" when some cases of beer fell off the truck on him. He was disabled for several months and restricted to light duty for several more. He received compensation through Northbrook, Standard's worker's compensation insurer at the time. All of this passed without controversy.

About one year after his first injury, again back at work on a beer truck, Nally was again injured, this time while handling a keg of beer – work that while heavy, was concededly part of his normal work duties. He again injured his lower back and right thigh. By now, however, Standard's worker's comp insurer was PMA.[30]

So as discussed earlier, the first question was whether this injury was a "recurrence" related to the first injury for which he received benefits, or an "aggravation," or new injury, entitling him to a new round of benefits.[31]   If this was

---

[29] IAB's Decision at 14 (citing *Nally*, 630 A.2d at 645-46).

[30] *Nally*, 630 A.2d at 644.

[31] *Id.* at 643-44.

a recurrence, Northbrook, the insurer at the time of the first injury, was "on the risk" and if it was a new injury – or an aggravation – PMA was.[32]

As might be expected in such a case, the battle of expert witnesses and detailed medical testimony on Nally's condition before and after the second incident was center stage. After a detailed review of all the medical evidence, the Board concluded that the second incident "did not involve sufficient untoward activity to cause a new injury and could not be deemed an intervening event."[33] The Board therefore ruled that any claim for benefits should be a claim against the insurer at the time of the first injury, the one that caused the injury that recurred at the time of the second claim for worker's compensation.[34]

Claimant here calls *Nally* a "successor liability" decision, one that belongs in that universe of comp claims limited to sorting out which insurer is liable on a claim arising from a preexisting condition created by a previously compensated workplace accident.[35] The Court does not think so. When the same carrier insures both the first and second injuries, the carrier is unlikely to litigate the recurrence/aggravation

---

[32] *Id.* at 644.

[33] *Id.*

[34] *Id.*

[35] Appellant's Opening Br. at 11 ("It is Claimant's position herein that without the earlier carrier being a party to the case, *Nally* does not apply.").

issue, since it is the same carrier that assumes the liability either way. Successor liability is one way the aggravation/recurrence question may come to the Board. But successor liability does not define a different mode of solving the aggravation/recurrence riddle.

For example, in *Woodward v. UE&C Catalytic,*[36] the Court analyzed an aggravation/recurrence dispute involving a single employer and, apparently, insurer. As here, the employee claimed a new injury but failed to convince the Board that it was not simply a recurrence from a previously compensated one.[37] Tracking many of the same arguments made by Claimant here, the Court affirmed the Board's findings.[38] Clearly, the analysis is unaffected by who is insuring the loss.

The aggravation/recurrence debate can only be resolved as the Board does what it did here: delve into the medical records and expert testimony in detail to determine whether the later injury is sufficiently distinguished from the previous one to be called a new or aggravated injury. The Court finds that the Board's decision is free from legal error.

---

[36] 2001 WL 946526, at *1 (Del. Super. Aug. 14, 2001).

[37] *Id.* at *5.

[38] *Id.* at *6.

11

**4. The Board's findings were supported by substantial evidence**

It would unduly prolong this Opinion to walk the reader through each bit of medical history and expert testimony in the record and presented to the Board. The following are the salient features.

In 2015, when Claimant was injured while working for the Bellevue Fire Company, his injury was to his back. An MRI in 2015 showed "broad based disc herniations at T6-T7, T7-T8, and T8-T9, as well as bulges at T9-T10 and T10-T11, and a disc protrusion at T5-T6."[39] Claimant's 2015 injuries were eventually determined by an expert to be permanent and he was given a 10% permanency in 2016.[40]

The medical evidence from his 2023 claim was brought to the Board through claimant's family physician, Dr. Tucker.[41] Claimant was initially administered pain medications and then sent for an MRI and chiropractic treatment. A December, 2023 MRI showed "broad based disc herniation at T6-T7, T7-T8 and T8-T9. It also showed disc bulges at T9-T10 and T10-T11 and a disc protrusion at T5-T6."[42]

---

[39] Appellant's Opening Br. at 5.

[40] IAB's Decision at 8.

[41] *Id.* at 5.

[42] Appellant's Opening Br. at 5.

12

The employer presented Dr. Matz, who both examined the Claimant and conducted a full review of all of the medical history. His testimony was clearly considered significant to the Board as it is reviewed in detail it its opinion. The Board summarized his opinion, saying:

> Dr. Matz noted for the Board that on the morning of October 6, 2023, Claimant's thoracic spine was not normal; Claimant's medical records clearly show a prior injury to Claimant's thoracic spine for which his then-treating doctor gave him a permanency rating of ten percent in 2016. Claimant had at least two MRIs taken of his thoracic spine before October 2023 and both of those MRIs showed degenerative changes in the thoracic spine. According to Dr. Matz, the kinds of symptoms and complaints of back pain about which Claimant began complaining on October 6, 2023, and later, are consistent with what one would expect from the injuries which Claimant sustained well before October 2023 and Claimant's slowly progressive thoracic disc disease.[43]

The Board is free to accept whatever expert testimony it wishes in making its determination.[44] On appeal, the "the reviewing court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions" because those functions are "reserved for the Board."[45] In this case, the Board clearly endorsed the view of Dr. Matz in

---

[43] IAB's Decision at 12-13.

[44] "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively for the Board." *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)).

[45] *Opportunity Ctr., Inc. v. Jamison*, 940 A.2d 946 (Del. 2007) (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

concluding that Claimant suffered a recurrence of his preexisting spinal maladies, not a new injury and not an aggravation of his previous injury.[46]

Finally, Claimant raises the Board's comment that there was "no intervening event" on October 6, 2023. Claimant argues that this is a credibility determination on Claimant's version of what happened and the Board failed to justify its finding that Claimant lacked credibility. The Court believes Claimant places too much emphasis on "no event" and not enough on "intervening."

In discussing the *Nally* Opinion, on which the Board relied, the Board referred several times to the *Nally* requirement that the chain of causation from a preexisting condition may only be broken by a new injury or aggravation brought about by "an *intervening* or untoward event which could be deemed the proximate cause of the new condition."[47]  Thus, the Board was not merely concerned with whether an "event" happened – we can safely assume one did.  The Board's concern was with whether the event was an "intervening event" within the meaning of *Nally* – one that breaks the chain of causation from the prior injury and presents a new "accident" within the meaning of the enabling legislation.  It may have been neater for the Board to say there was "no intervening event that broke the chain of causation," but we

---

[46] "Claimant did not meet his burden of proof. The Board agrees with Dr. Matz." IAB's Decision at 17.

[47] *Id.* at 14 (quoting *Nally* 630 A.2d at 646).

14

who are now schooled in the "quagmire"[48] of recurrence and aggravation understand the Board's conclusion.  Claimant was simply unable to meet his burden of proving that the October incident produced a consequence sufficient to break the chain of causation from the previous injury. The Board's conclusions were supported by substantial evidence.

## CONCLUSION

For all of the foregoing reasons, the decision of the Industrial Accident Board is **AFFIRMED**.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge

---

[48] *Parson*, 2013 WL 297960 at *4 (in granting reargument and reversing itself, the Court rued the confusion in application of the *Duvall* and *Nally* standards, calling it a "legal quagmire.").